UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JONATHAN BELL,

    Plaintiff,

                                      Civil No. 05-74311
                                      Hon. John Feikens

    v.

PREFIX, INC.,
    Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Defendant, Prefix, Inc. brings a motion for summary judgment, arguing that Plaintiff Jonathan Bell (1) failed to make a prima facie case of retaliation under the Family Medical Leave Act (FMLA); and (2) that even if Plaintiff made a prima facie case, Defendant produced a legitimate, non-discriminatory reason for dismissing Plaintiff and Plaintiff failed to create a dispute of material fact that Defendant's reason was mere pretext. For the reasons below, I GRANT the motion.

**I.    FACTUAL BACKGROUND**

    **A.    Undisputed Facts**

Plaintiff was a model maker in the automobile industry for 17 years before he began working for Defendant as an at-will employee in August 2003. In all, Plaintiff worked at half a dozen companies, leaving his previous employers due to lack of work, employer financial difficulties, or because his employer went out of business. (Def't Mot. for Summ. J. Ex. A, Bell Dep. at 15-27.) Plaintiff's employment at Prefix was previously affected by the economy when he

was laid off in November 2004 and terminated in December 2004 because of a lull in business (Def't Mot. for Summ. J. Exs. C, D;) Plaintiff was then rehired in February 2005 when there was work to be done. (Def't Mot. for Summ. J. Ex. E.)

On or about July 23, 2005, Plaintiff's father fell into a coma after surgery for an aortic aneurism and died on August 14, 2005. His father's illness caused Plaintiff to miss at least parts of several work days: (1) July 22 and 23, the day before his father's surgery and the day of the surgery; (2) July 26; (3) July 29; and (4) August 6. (Def't Mot. Summ. J. Ex. A, Bell Dep. at 61-83; Pl. Ex. 1 at 36-37 & Ex. 3 at 12-14.)

In mid-July 2005, Defendant hired a new General Manager, Philip Serra, with the mandate that he manage operations and turn a profit. (Def't Mot. for Summ. J. Ex. F, Zeile Dep. 30, 48.) One of the methods Serra attempted in his efforts to make Defendant profitable was to cut jobs in departments that were overstaffed or lacked work. (Def't Mot. for Summ. J. Ex. G, Serra Dep. at 35-39.) Plaintiff was again terminated on August 8, 2005. (Def't Mot. Summ. J. Ex. H.) During that time, Defendant's owner laid off three employees; subsequently, the model department in which Plaintiff worked went from six employees to just one employee within a year of Plaintiff's dismissal. (Def't Mot. for Summ. J. Ex. F, Zeile Dep. at 41, 46-47.).

**B.     Disputed Facts**

        1.     Plaintiff's Claims

Plaintiff claims he requested and was approved by his immediate supervisors to take intermittent FMLA unpaid leave so he could attend to his father's health care and hospitalization. (Pl. Resp. to Summ. J. Ex. 2 at 11-16; Ex. 7 at 37; Ex. 8 at 15-16.) On July 22, Plaintiff left work early to be with his father the night before his father's surgery. Plaintiff sat with his father the night before surgery and explained the surgery, in an attempt to settle his father's nervousness.

2

The next day Plaintiff was at the hospital for some of his father's surgery. During the surgery, he left the hospital to eat and later returned to visit his father after the surgery had finished. (Pl. Resp. to Summ. J. Ex. 6; Bell Dep. at 64-66, 76.) On July 26, Plaintiff claims he was called by the hospital and told his father's condition was worsening. Plaintiff requested and received permission to leave work early, and visited his father who was incoherent. On July 29, Plaintiff again left early to visit his father. (Id. at 77-82.) On August 6, Plaintiff asked for and received the day off so he could attend to his father, which he did; he later went to a birthday party for his mother. In exchange, Plaintiff reported to work the following day, which was a Sunday. (Id. at 83-84.) Plaintiff described each of these visits as more or less an hour long, mostly because he was unable to cope with seeing his father in a comatose condition. His father was incoherent and unable to visibly react to Plaintiff's words, except for when his father would occasionally roll his eyes. (Id. at 63, 70-73.)

At various times during those leaves, Plaintiff claims he served as an alternate medical power of attorney and attended medical care conferences and consultations, and as the principal medical power of attorney when his brother, Gregory Bell, was absent. However Plaintiff is unable to provide documentation that he was listed as the alternate medical power of attorney.[1] (Pl. Exs. 1, 3-5; Ex. 6 at 87.) These duties included being the only authorized power of attorney at the hospital during his father's surgery and authorizing his father's final surgery on August 6, 2005. (Pl. Resp. to Summ. J. Ex. 6 at 63-65; Ex. 3.) Plaintiff in a supplemental brief provides hospital

---

[1] Plaintiff also refers to physician letters which he included in his response brief. The letters attest to Plaintiff's role in caring for his father. (Pl. Resp. Br., Exs. 11, 12.) Defendant moves to strike these letters as inadmissible because they are not sworn as required by Fed. R. Civ. P. 56(e). Plaintiff agrees but argues the letters should be considered for their cumulative effect. As the removal of these letters from the record does not affect my analysis, it is not necessary for me to decide this issue.

3

documentation in which an August 3rd procedure was approved by Plaintiff over the phone, as well as nursing notes from August 3-5 showing that hospital staff routinely updated Plaintiff on his father's condition during the first week of August. (Pl. Supp. Resp. to Summ. J., Ex. 2.)

Plaintiff further claims that he was a conscientious worker who was well regarded according to his last evaluation; (Pl. Resp. to Summ. J. Br., Ex. 17;) that there was a surplus of at least 6 months work when he was terminated; (Pl. Resp. to Summ. J. Exs. 1-2, 13; Ex. 7 at 35;) and that a full-time and a part-time worker were hired after his dismissal. (Pl. Resp. to Summ. J. Ex. 7 at 54-55.)

2. Defendant's Claims

Defendant characterizes Plaintiff's time at the hospital as mere visits, times when Plaintiff left work early so he could sit with his father rather than provide care. (Def't Mot. for Summ. J. Ex. A at 70, 81-82.) Defendant suggests that the visits did not provide physical or psychological care because of the lack of response from Plaintiff's father and the short nature of Plaintiff's visits. (Id. at 63, 79-81, 90.) As to Plaintiff's contention that he served as an alternate medical power of attorney, Defendant states that Plaintiff only spoke to the doctors attending his father once and that other family members such as his father's wife and Plaintiff's brothers were at the hospital to make decisions, as evidenced by Plaintiff's inability to remember the names of his father's doctors. (Id. at 63-64, 68-69, 79, 86-87, 90.) Defendant further supports its contention with hospital documentation that shows Plaintiff's father consented to his own surgery (Def't Reply Br., Ex. C,) and that nursing notes from August 3 and 13 and an August 10 consent form show Plaintiff's brother listed as Power of Attorney. (Def't Reply Br., Exs. D-F.)

According to Defendant, the facts show Plaintiff's termination stemmed from its desire to increase profits, as evidenced by the hiring and actions of Philip Serra as General Manager in July

4

2005. (Def't Mot. for Summ. J. Ex. F, Zeile Dep. at 48.) Serra testified that the decision to terminate Plaintiff was motivated by Defendant's goal to increase its profits and that he was unaware Plaintiff had left work early on three occasions to attend to his father. (Def't Mot. for Summ. J. Ex. G, Serra Dep. at 48, 57, 65.)

## III. LEGAL STANDARD

### A. Standard of Review

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if proof of that fact would establish or refute one of the essential elements of a claim or defense and would affect the application of governing law to the rights and obligations of the parties. Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence and any reasonable inferences drawn therefrom in a light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted); Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001).

The burden on the moving party is satisfied where "there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). For a claim to survive summary judgment, the nonmovant must offer more than a mere scintilla of evidence as to the material facts. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," summary judgment should be granted. Matsushita, 475 U.S. at 587. The trial court has some discretion to determine whether the nonmovant's claim is plausible. Betkerur v.

5

Aultman Hosp. Ass'n, 78 F.3d 1079, 1087-88 (6th Cir. 1996); see also Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989).

**B.     The Law of the FMLA**

The FMLA protects employees from retaliation for exercising their rights under the Act. See 29 U.S.C. § 2615(a)(1); Skrjanc v. Great Lakes Power Serv. Co., 272 F.3d 309, 314 (6th Cir. 2001). To establish retaliation, Plaintiff must show a prima facie case "that (1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) a causal connection existed between the protected activity and the adverse action." McConnell v. Swifty Transp. Inc., 198 Fed Appx. 438, 442 (6th Cir. 2006) (citing Skrjanc, 272 F.3d at 314).

Because there is no direct evidence of retaliation, this Court must view the record through the McDonnell-Douglas burden-shifting analysis. Skjanc, 272 F.3d at 315. Plaintiff must first prove a prima facie case; then the burden shifts to the Defendant to come forward with a legitimate, non-discriminatory reason for the adverse action; then Plaintiff must offer evidence that creates a factual question of whether defendant's proffered reason is pretextual. Brenneman v. MedCentral Health Sys., 366 F.3d 412, 417 (6th Cir. 2004).

**IV.    ANALYSIS**

**A.     Plaintiff Makes a Prima Facie Case**

The first step is to determine whether Plaintiff made a prima facie case of retaliation for taking FMLA leave. To qualify as protected leave, Plaintiff could take time off to care for a family member with a serious health condition.[2] 29 C.F.R. § 825.100. By "care for," the code includes both physical care and "psychological comfort and reassurance which would be beneficial to a . . .

---

[2]Family member in this instance is an immediate relation such as a child, spouse, or parent.

parent with a serious health condition who is receiving inpatient or home care." 29 C.F.R. § 825.116(a). "Care" also includes situations where Plaintiff might be needed to fill in for others who are caring for the ailing family member or to make decisions or arrangements for changes in care. 29 C.F.R. § 825.116(b).

Defendant argues that Plaintiff failed to make his prima facie case because Plaintiff cannot show that his visits were protected under the FMLA. Specifically, Defendant suggests that federal courts construe the meaning of "care for" narrowly, and that a mere visit to a sick parent does not qualify as FMLA protected leave. See Fioto v. Manhattan Woods Golf Enters., 123 Fed. Appx. 26, 28 (2d Cir. 2005) (employee who took day off from work to visit mother while she underwent emergency brain surgery was not protected by FMLA); Cianci v. Pettibone Corp., No. 95-C-4906, 1997 WL 182279 at *6-7 (N.D. Ill.1997) (court ruled that FMLA only protects those assigned to care for the ailing parent, not for child who merely wants to visit ailing parent); Tellis v. Alaska Airlines. 414 F.3d 1045, 1047-48 (9th Cir. 2005) ("caring for" a family member with a serious health condition entails some level of participation in the physical or psychological treatment of that family member; court denied Plaintiff's claim that he psychologically cared for ailing wife by going cross country to retrieve family car).

Defendant claims the record shows Plaintiff did nothing more than visit with his father during his absences from work and did not provide psychological comfort because his father was unresponsive and the visits were short. However, the record shows that during his initial visit, Plaintiff spoke with his father regarding the upcoming surgery, and at least attempted to quell his father's pre-surgery nervousness. The next day Plaintiff left work again to wait as the operation took place. After leaving the hospital during the operation to eat, Plaintiff visited with his father for between a half hour and an hour while his father was in a drug-induced coma. (Def't Motion,

7

Ex. A. at 69-71.) Plaintiff's father never woke up from the coma, and the mostly unresponsive state kept Plaintiff and his father from consciously interacting after the surgery and during Plaintiff successive visits with his father.

Plaintiff's time with his father was psychological care. First, Defendant's argument that the lack of response from Plaintiff's father proves there was no psychological care given during their post-surgery interactions together is untenable. Taken to its logical conclusion, Defendant's argument would leave the FMLA without an allowance for psychological care if the loved one was unable to visibly react to it.

Second, Defendant's own case laws fails to supports its contention. Defendant cites the court Fioto[3] as support for its argument that Plaintiff was merely visiting his father, not giving him psychological care. In Fioto, Plaintiff testified that he would need a day off of work because his mother was undergoing surgery for brain cancer. Plaintiff went to the surgery but was unable to visit with his mother prior to the surgery or after it was unable to, speak to her when she was in a conscious state, nor was he consulted regarding his mother's care. The Court in Fioto made it clear that it does not take much for the standard of providing psychological care to be met; mere interaction with the parent and the doctors will do. See Fioto, 270 F. Supp.2d at 405-06.

The facts in this matter show that Plaintiff met the standard presented in Fioto. Plaintiff attended to his father prior to surgery when his father was conscious, and afterwards as best he could, given his father's lack of consciousness. Although Defendant may question the quality of that interaction because of Plaintiff's father's inability to interact and Plaintiff's inability to stay for long periods of time, it is clear that Plaintiff was attending to his father's psychological needs. See

---

[3]As it relates to the FMLA claim, the Court in Fioto dismissed the FMLA claim on a motion for Judgment as a Matter of Law after a jury found that the act had been violated.

Plumley v. Southern Container, Inc., Case No. 00-140-PC, 2001 WL 1188469 at *7-8 (D. Me. 2001) (stating in dicta that Plaintiff's presence with ailing father was comforting and reassuring, and met FMLA standard for providing psychological care).

Third, the record includes an instance in which hospital records indicate Plaintiff gave telephonic approval for treatments on his father and other notations that indicate the hospital staff called to update Plaintiff on his father's condition, an indication that Plaintiff had interaction with the hospital staff regarding care for his father. (Pl. Suppl. Br. Ex. 2.) For these reasons, I find Plaintiff has satisfied the requirements to make a prima facie case

**C.    Plaintiff Fails to Demonstrate Pretext.**

Defendant has produced a legitimate, non-discriminatory reason for Plaintiff's dismissal: a desire to increase its profits. Defendant's owner stated the following during his deposition.

> A.    I believe I have discussed already the fact that the company was not performing according to what we needed to do as it relates to profitability.
> Q.    Okay.
> A.    At that point in time, I asked Mr. Sarrah [sic] to get the necessary changes to turn a profit.

(Def't Motion, Ex. F at 48.

Once Defendant has given a non-discriminatory reason for the firing, it is Plaintiff's responsibility to create a factual question that Defendant's reason is mere pretext. See Brenneman v. MedCentral Health Sys., 366 F.3d 412, 417 (6th Cir. 2004). He can do so through one of three methods: (1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the Defendant; or (3) that they were insufficient to motivate discharge. Manzer v. Diamond Shamrock Chem. Co., 29 F.3d 1078, 1084 (6th Cir. 1994). Plaintiff failed to do so.

Plaintiff has no evidence to counter Defendant's stated reason of wanting to increase

9

profitability, which is a sufficient reason to discharge at-will employees. Plaintiff's direct supervisor testified at deposition:

> Q. Mr. Closs, have several people been let go since Mr. Bell's departure from the company?
> A. Yes.
> Q. And is that through the various departments of the company?
> A. Yes, it's pretty much company wide.
> Q. And why is that?
> A. Well, we've got a goal to try to make 20,000 a year, or 20 million a year, I mean, and that's the goal is to bring up the profitability, sure.
> Q. And in terms of bring up profitability, are they expecting you to run lean or not so lean?
> A. As lean as possible, sure.

(Def't Motion, Ex. J at 62-64.) Further, Defendant's plant manager testified at deposition he was charged to change Defendant from "nonprofitable to profitable" and that he was "essentially looking at what [he] had for a work force and what [he] needed to do to turn that company around." (Def't Motion, Ex. I at 36-37.)

Plaintiff briefly addresses this reason by alleging that two other persons, Larry Rossman and Michael Lange, were hired to replace Plaintiff in his department. If the allegation were supported by evidence, there would be a material fact in dispute that could establish pretext. However, Plaintiff has no evidence for this contention, nor can I find anything in the record that can support Plaintiff's contention. Plaintiff also complains that Defendant refused to divulge financial records during discovery that would prove or disprove its profitability. On April 24, 2006 Plaintiff filed a Motion to Show Cause because of Defendant's failure to share records regarding its contracts with General Motors and its profitability. On May 5, 2006, I denied that motion because Plaintiff did not also include certification with his motion that he tried in good faith to confer with Defendant. I was confident that the parties could resolve their differences through good faith and profession, yet the door was open to Plaintiff to come back to this Court for relief if

10

further requests for this information were not met. At no point did Plaintiff avail himself of this opportunity. To come before this Court during a motion for summary judgment and then complain of the lack of cooperation by Plaintiff in providing discovery materials regarding this aspect of the case is insufficient at best. I can only assume by Plaintiff's actions, or the lack thereof, that he was content with the materials provided by Defendant. In any event, Plaintiff did not create a legitimate factual question to counter Defendant's legitimate, non-discriminatory reason for firing Plaintiff – the desire to increase profit by reducing workforce. With no dispute of material fact regarding Defendant's asserted reason for the termination, Plaintiff's claims must fail as a matter of law.

## V. CONCLUSION

Plaintiff failed to create a factual question of whether Defendant's legitimate, non-discriminatory reason for Plaintiff's dismissal was pretext. I, therefore, GRANT Defendant's Motion for Summary Judgment.

**IT IS SO ORDERED.**

Date: __July 23, 2007__    s/John Feikens
                                            United States District Judge

> Proof of Service
>
> I hereby certify that the foregoing order was served on the attorneys/parties of record on July 23, 2007, by U.S. first class mail or electronic means.
>
> s/Carol Cohron
> Case Manager