UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**JONATHAN BELL,** an individual,

    Plaintiff,

vs.

**PREFIX CORPORATION,** a Michigan corporation,

    Defendant.

Case No.: 05-74311-CV
HON. LAWRENCE P. ZATKOFF

_____/

**ELMER L. ROLLER** (P23592)
Elmer L. Roller P.C.
Attorney for Plaintiff
1760 S. Telegraph Road, Suite 300
Bloomfield Hills, MI 48302-0183
(248) 335-5000

**GARY P. SUPANICH** (P45547)
GARY P. SUPANICH, PLLC
Co-Counsel for Plaintiff
116 E. Washington
Suite 260
Ann Arbor, MI 48104
(734) 276-6561

**LINDA WATSON** (P45320)
Clark Hill, PLC
151 S. Old Woodward Avenue, Suite 200
Birmingham, MI 48009
(248) 988-5881

_____/

## PLAINTIFF'S MOTION IN LIMINE

Now comes the Plaintiff, JONATHAN BELL, by and through the auspices of his attorneys, Elmer L. Roller and Gary P. Supanich, and pursuant to Rules 102, 104, 401, 402 and 403 of the Federal Rules of Evidence, respectfully request that this Honorable Court request entry of an order precluding the Defendant, Prefix Corporation, its agents, witnesses, representatives and attorneys from arguing, testifying to, making reference to or otherwise introducing any evidence regarding:

(1) "at will" employment status was not a legitimate nondiscriminatory reason to terminate

while on FMLA leave;

(2) failure to achieve a certain level of profitability, when no profit/loss statements or tax returns were never produced; and

(3) Defendant's "lack of work" reason must be considered only at the time of discharge:

and Plaintiff says as follows;

1. The instant case involves a retaliation claim arising under the Family and Medical Leave Act (FMLA), 29 USC 2601 et seq, when on August 8, 2005 Defendant Prefix discharged Plaintiff Jonathan Bell for exercising his FMLA rights to take intermittent leave to care for his dying father, as his alternate Patient Advocate.

## "AT WILL" EMPLOYMENT STATUS
## IS NOT A LEGITIMATE NON-DISCRIMINATORY REASON

2. Defendants seeks to defend its violation of the FMLA on the basis that Plaintiff was an "at will" employee under state law, which is complete defense to the federal statute.

3. Plaintiff's "at will" job status is an employment classification and not a legitimate non-discriminatory reason to discharge.

## PROFITABILITY AND NOT MAKING "ENOUGH" MONEY
## AND FAILURE TO PRODUCE TAX RETURNS AND FINANCIAL REPORTS

4. Defendant Prefix wishes to have it both ways: Defendant Prefix seeks to introduce testimony and partial business reports to support its defense that it was "not making enough money" to justify Plaintiff's termination; but it has refused to produce its financial reports to support its contentions.

5. Before the instant case was appealed, Plaintiff filed two motions to compel the production of certain financial documents relating to Defendant's defense of failure to be profitable

or "make enough money." Defendant produced no tax returns or profit/loss statements.

6. On March 7, 2006 Plaintiff filed a FRCP 30(b)(1) Notice of Taking Deposition, requesting the production of Defendant's financial records upon which it would rely to support its "profitability" defense and a designated corporate official, who was knowledgeable about and could produce Defendant's records. No such knowledgeable person was produced and no "profit or loss" records were produced.

7. While Defendant Prefix has objected to said deposition on the basis of relevancy, limited and partial financial information was produced at other depositions, where the deponents had either no personal knowledge or could not interpret any of the repots.

8. Defendant produced a Work Load report, for the months of July through December 2005, but failed to produce or any other document reflecting the amount of work to be done within Prefix, the hours per project and the remaining hours available for each project.

9. Defendant has admitted that the requested documents exist, many of which are on Prefix's computers and e-mail system. Defendant has refused to produce, objected on the basis that the request was burdensome and irrelevant.

10. Defendant has produced a cumulative Work Load report, which is a cumulative report as of March 2006. Said report was not responsive to the Notice of Taking Deposition Duces Tecum in that:

    A. As of August 8, 2005 the Project Load Report does not reflect those projects on which Plaintiff was working;

    B. As of August 8, 2005, the Project Load Report does not reflect the budgeted hours, remaining hours, profitability, used hours, nor any activity to revise or change these items from the Start date to the Finish date.

3

11. Plaintiff also requested copies of all e-mail documents or materials maintained regarding 2005 lay-offs, terminations and dismissals. No e-mail or digitally maintained information were produced.

12. Defendant should be precluded from introducing, relying upon or otherwise testifying on the basis of internal reports, tax returns, profit/loss statements and digital materials it objected to and refused to produce during discovery.

## DEFENDANT'S "LACK OF WORK" REASON
## MUST BE CONSIDERED ONLY AT THE TIME OF DISCHARGE

13. Defendant Prefix seeks to bootstrap its argument that Plaintiff was justifiably terminated due to "lack of work" on subsequent dates, rather than the date of termination, August 8, 2005.

14. As a matter of law, Defendant's contention of lack of work can only be considered as of the date of discharge, August 8, 2005 and not at any subsequent date.

## RELIEF REQUESTED

WHEREFORE, Plaintiff Jonathan Bell respectfully requests that this Honorable Court grant Plaintiff's Motion in Limine and preclude the Defendant, Prefix Corporation, its agents, witnesses, representatives and attorneys from arguing, testifying to, making reference to or otherwise introducing any evidence regarding (1) "at will" employment status as a legitimate non-discriminatory reason to terminate while on FMLA leave; (2) alleged failure to achieve a certain level of profitability, when no profit/loss statements or tax return were produced; (3) and Defendant's "lack of work" defense can be considered only at the time of discharge, August 8, 2005.

## **TABLE OF CONTENTS**

INDEX OF AUTHORITIES..................................................................................................... ii

I. PLAINTIFF'S "AT WILL" EMPLOYMENT CLASSIFICATION, DOES NOT CONSTITUTE A LEGITIMATE NONDISCRIMINATORY REASON TO RETALIATE.......................................................................................................................1

    (a) Even assuming for the sake of argument that it were a legitimate nondiscriminatory reason, Defendant Prefix's stated reason at the time for Plaintiff's termination – Plaintiff's at-will employment status – was pretextual.................................................................................................................4

II. A LEGITIMATE NON-DISCRIMINATION REASON MUST EXIST AT THE TIME OF DISCHARGE..................................................................................................4

III. DEFENDANT PREFIX'S "LACK OF WORK" RATIONALE IS PRETEXTUAL BECAUSE AT THE TIME OF PLAINTIFF'S DISCHARGE DEFENDANT PREFIX HAD AN ABUNDANCE OF WORK AND THE PLANT WAS WORKING OVERTIME SIX OR SEVEN DAYS A WEEK. ..............................................5

IV. DEFENDANT PREFIX'S DESIRE TO INCREASE ITS PROFITABILITY DOES NOT CONSTITUTE A LEGITIMATE, NONDISCRIMINATORY REASON FOR TERMINATING PLAINTIFF.......................................................................................7

V. EVEN IF DEFENDANT PREFIX'S DESIRE TO INCREASE ITS PROFITABILITY WERE CONSIDERED TO BE A LEGITIMATE NONDISCRIMINATORY REASON FOR TERMINATING PLAINTIFF, IT IS PRETEXTUAL BECAUSE DEFENDANT PREFIX WAS PROFITABLE AT THE TIME THAT IT DISCHARGED HIM...............................................................................8

## INDEX OF AUTHORITIES

**Cases**

*Burton v. Plastics Research Corp*, 134 F.Supp.2d 881 (E.D. Mich 2001) .................................. 1

*Edelberg v. Leco Corp*, 236 Mich. App. 177; 599 N.W.2d (1999) ............................................. 3

*Gibson v. American Bankers Ins. Co.*, 289 F.3d 943 (6th Cir. 2002) .......................................... 3

*Johnson v. Univ. of Cincinnati*, 215 F.3d 561 (6th Cir. 2000) ..................................................... 4

*Lytle v. Malady (On Rehearing)*, 458 Mich. 153; 579 N.W.2d 906 (1998) ................................ 1

*Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078 (6th Cir. 1994) .................................. 4

*Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588 (5th Cir. 1978) ........................................ 8

*Rankin v. McPherson*, 483 U.S. 378 (1987) ................................................................................ 2

*Rood v. General Dynamics Corp*, 444 Mich. 107; 507 N.W.2d 591 (1993) ............................... 1

*Smith v. Chrylser Corp.*, 155 F.3d 799 (6th Cir. 1998) ........................................................... 5, 7

*Suchodolski v Michigan Consolidated Gas Co*, 412 Mich. 692; 316 N.W.2d 710 (1982) ........... 3

*Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579; 292 N.W.2d 880 (1980) ... 1

*Wexler v. White's Fine Furniture*, 317 F.3d 564, 576 (6th cir. 2003) ..................................... 4, 5

**Other Authorities**

C. Estlund, *Wrongful Discharge Protections in an At-Will World*, 74 Tex. L. Rev. 1655 (1996) . 3

U.S. Constitution, Art. 6, cl. 2 ...................................................................................................... 3

ii

**BRIEF OF LAW**

I. **PLAINTIFF'S "AT WILL" EMPLOYMENT CLASSIFICATION, DOES NOT CONSTITUTE A LEGITIMATE NONDISCRIMINATORY REASON TO RETALIATE**

In this case, the stated or espoused reason for Plaintiff's discharge at the time of his discharge was that he was an at-will employee.

Under Michigan common law, employment relationships are presumably terminable at the will of either party. *Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579; 292 N.W.2d 880 (1980); *Lytle v. Malady (On Rehearing)*, 458 Mich. 153, 163; 579 N.W.2d 906 (1998). As noted by the district court in *Burton v. Plastics Research Corp*, 134 F.Supp.2d 881, 887 (E.D. Mich 2001),

> "The Michigan Supreme Court has held that . . . *[i]n the absence of . . . unlawful reasons for discharge such as race . . . discrimination, private sector employees are terminable at the will of their employers.*" *State Employees Association v. Department of Mental Health*, 421 Mich. 152, 158; 365 N.W.2d 93, 96 (1984) (emphasis added and internal citation omitted.) Under Michigan law, "where an employer has a legitimate reason to terminate (e.g., . . . a contract for employment at will), it may not do so for illegal reasons such as unlawful discrimination." *Featherly v. Teledyne Industries, Inc.*, 194 Mich. App. 352; 486 N.W.2d 361 (1992).

Thus, absent illegal discrimination, an "at will" employee can be discharged at any time and for no reason; the employer can do so arbitrarily and capriciously. *Rood v. General Dynamics Corp, 444 Mich. 107, 116; 507 N.W.2d 591 (1993)*.

So even though Plaintiff's at-will employment status generally allowed Defendant Prefix, absent an illegal discriminatory reason, to terminate his employment for any reason, even a false or unjustified reason, or no reason at all. Once Plaintiff established his prima facie case of retaliation under the FMLA, he was in a protected class of employees under federal law, requiring Defendant Prefix to tender a *legitimate nondiscriminatory reason* for his termination. See *Rankin v.*

*McPherson*, 483 U.S. 378, 383-84 (1987).

Plaintiff's at-will employment status simply does not qualify as a legitimate nondiscriminatory reason for an adverse employment action under the FMLA, as a matter of law. Principally, that is because being an at-will employee constitutes a ***status***, not a ***reason*** for an adverse employment action. Simply put, employment at-will status means that an employer does not have to give a reason for discharging an employee. Thus, terminating an at-will employee, such as Plaintiff, merely because he or she is an at-will employee is not to give a reason at all. Rather, at-will employment status is only an acknowledgment that, absent illegal discrimination, the employer generally has the power to terminate the employment relationship for any reason or no reason at all, even an arbitrary or capricious reason, but not that the employer is justified in doing so. In short, having the power to terminate an employee is not the same as providing a reason or justification for doing so, let alone a legitimate nondiscriminatory reason for such action.

Once the plaintiff establishes a prima facie case of discrimination under the FMLA, he or she is in the class of protected employees under federal law and thus cannot be subject to an adverse employment action unless the employer offers a ***legitimate, nondiscriminatory reason*** for such action. Any reason will not do; it must be a legitimate nondiscriminatory reason.

If this were not so, it would allow Michigan common-law doctrine governing at-will employment relationships to trump the provisions of federal statutory law embodied in the FMLA protecting all eligible employees, including at-will employees, against discriminatory treatment when they exercise their rights under federal law. Because at-will employment status only indicates that an employer has the power to discharge an employee for any reason at all or no reason (except an illegal discriminatory reason), an employee's federally protected rights under the FMLA would be eviscerated if an employer could merely cite the employee at-will employment status as a

legitimate, nondiscriminatory reason for an adverse employment action once the employee has established a prima facie case under the FMLA. However, the FMLA, like other federal civil rights statutes touching on employment relationships, is a federally mandated *exception* to the common law concept of employment at will. See generally C. Estlund, *Wrongful Discharge Protections in an At-Will World,* 74 Tex. L. Rev. 1655 (1996). Pursuant to the Supremacy Clause, U.S. Constitution, Art. 6, cl. 2, the protections offered by federal law in the FMLA thus supersede the state common-law doctrine of at-will employment. See *Gibson v. American Bankers Ins. Co.*, 289 F.3d 943, 948 (6th Cir. 2002) ("Under the Supremacy Clause of the United States Constitution, state laws that interfere with, or are contrary to the laws of congress, made in pursuance of the constitution are invalid.") (citing *Wis. Pub. Intervenor v. Mortier,* 501 U.S. 597, 604 (1991) (quoting *Gibbons v. Ogden,* 22 U.S. (9 Wheat) 1, 211 (1824)) (internal quotations omitted).

Further, the conclusion that at-will employment status, by itself, does not constitute a legitimate nondiscriminatory reason for an adverse employment action under the FMLA is consistent with Michigan's public policy exception to at-will employment. Under this exception, an at-will employee may have an action for wrongful discharge if the discharge is contrary to public policy. <u>Suchodolski v Michigan Consolidated Gas Co, 412 Mich. 692, 694-696; 316 N.W.2d 710 (1982)</u>. The three public policy exceptions to the at-will doctrine apply when (1) the employee is discharged in violation of an explicit legislative statement prohibiting discharge of employees who act in accordance with a statutory right or duty, (2) the employee is discharged for the failure or refusal to violate the law in the course of employment, and (3) the employee is discharged for exercising a right conferred by a well-established legislative enactment. *Edelberg v. Leco Corp,* 236 Mich. App. 177, 180; 599 N.W.2d (1999) (citing *Suchodolski, supra.*). For that reason, Plaintiff's Complaint alleges a state common-law claim of wrongful discharge based upon the fact that he was discharged

3

for exercising his federal right to intermittent leave conferred by the U.S. Congress through its enactment of the FMLA. Clearly, Plaintiff's at-will employment status does not change the fact that Defendant Prefix must comply with the law by offering a legitimate nondiscriminatory reason for discharging him at the time that he was discharged.

    (a)   <u>Even assuming for the sake of argument that it were a legitimate nondiscriminatory reason, Defendant Prefix's stated reason at the time for Plaintiff's termination – Plaintiff's at-will employment status – was pretextual.</u>

Nevertheless, even if the analysis proceeds further, it is clear that the reasons that Defendant Prefix has proffered in the course of litigation were pretextual because they either had no basis in fact or did not actually motivate the decision to terminate Plaintiff. *Wexler, supra.*, 317 F.3d at 576; *Johnson v. Univ. of Cincinnati*, 215 F.3d 561 (6th Cir. 2000), *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078 (6th Cir. 1994). For one thing, Mr. Serra gave deposition testimony contradicting his stated reason given at that time for Plaintiff's discharge, backpedaling from his claim that Plaintiff's termination was based upon his at-will employment status. At first, according to Mr. Serra, when Plaintiff was discharged, "[h]e was released as an At-Will Employee." (Serra Dep, 38). In response to whether "[Plaintiff] was released for lack of work," Mr. Serra reiterated this, testifying: "No, it means he was just released as an At-Will employee." Serra Dep. 38. However, in response to the question about whether there was work for him to do, Mr. Serra equivocated: "We were overstaffed in that department so yes, there was a lack of work." Id.

## II. A LEGITIMATE NON-DISCRIMINATION REASON MUST EXIST AT THE TIME OF DISCHARGE

Since Plaintiff filed his Complaint, Defendant Prefix, as part of its litigation strategy, has offered asundry reasons for Plaintiff's discharge. Originally, as already discussed, Defendant Prefix claimed that Plaintiff was terminated on the ground that he was an at-will employee. Subsequent to the Complaint being filed, Defendant Prefix has changed its story, claiming that he was discharged

4

for economic reasons. Among them, Defendant Prefix claims that there was a lack of work. Alternatively, Defendant Prefix claims that Plaintiff was discharged because there was a work force reduction to increase profitability. Each of Defendant Prefix's proffered claims were pretextual.

In analyzing whether Defendant Prefix carried its burden of production in providing a legitimate nondiscriminatory reason for Plaintiff's termination, Defendant Prefix's proffered reasons must have been honestly held to be valid and not pretextual. To be honestly held, Defendant Prefix must establish that its reasonable reliance upon the particularized facts that were before it *at the time* the decision was made. *Smith v. Chrylser Corp.*, 155 F.3d 799 , 806 (6th Cir. 1998): "[T]he key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Id*. at 807. However, if the plaintiff "produce[s] sufficient evidence to establish that [the defendant] failed to make a reasonably informed and considered decision before taking its adverse employment action, thereby making its decisional process 'unworthy of credence,' then any reliance placed by the [defendant] in such a process cannot be said to be honestly held." *Id*. at 807-808. Further, an employer's business judgment is not an absolute defense to unlawful discrimination. *Wexler v. White's Fine Furniture*, 317 F.3d 564, 576 (6th cir. 2003) (citing *E.E.O.C. v. Yenkin-Majestic Paint Corp.*, 112 F.3d 831, 835 (6th Cir.1997) ("Although it is true that a factfinder should refrain from probing an employer's business judgment, a decision to terminate an employee based upon unlawful considerations does not become legitimate because it can be characterized as a business decision.")).

### III. DEFENDANT PREFIX'S "LACK OF WORK" RATIONALE IS PRETEXTUAL BECAUSE AT THE TIME OF PLAINTIFF'S DISCHARGE DEFENDANT PREFIX HAD AN ABUNDANCE OF WORK AND THE PLANT WAS WORKING OVERTIME SIX OR SEVEN DAYS A WEEK.

As part of its litigation strategy, Defendant Prefix abandoned its stated reason for Plaintiff's discharge, instead claiming that Plaintiff was terminated because there was an alleged "lack of work"

at the time of his discharge. However, there is compelling evidence that the "lack of work" rationale is clearly pretextual for at the time of Plaintiff's discharge there was an abundance of existing work for at least six months, even if new orders were not received. (Plaintiff Affidavit, ¶¶ 9, 41; Turner Affidavit, ¶¶ 23). In fact, when he was discharged, Plaintiff, as well as the rest of the plant, was working six or seven days a week, including overtime hours on Saturdays and Sundays. Indeed, at the time of his discharge, Plaintiff alone was engaged in 12 separate projects, involving General Motors DV & Q and Ford work and performing the work under budget. (Turner Affidavit, ¶¶ 21-22, 32). Moreover, Plaintiff was the *only* design, quality and verification (DQV) technician at the plant certified to work on GM projects, at a time when Defendant Prefix was overloaded with GM assignments and having trouble keeping up them! (Turner Affidavit, ¶¶ 6). For that reason, Plaintiff's immediate supervisor vigorously opposed Plaintiff's discharge. (Turner Affidavit, ¶¶ 32).

Moreover, immediately after Plaintiff was discharged, another employee, who was not a GM "DQ & V" technician, replaced Plaintiff. (Turner Affidavit, ¶ 39). Plaintiff's work was also distributed among four existing employees in the department. (Closs Dep, 53). Subsequently, Defendant Prefix hired a new full-time worker, Peter Rossman, to replace Plaintiff. (Closs Dep, 9, 54-55). A new part-time worker, Michael Lange, was also hired. (Closs Dep, 9, 54-55). Because of the heavy work load, Defendant Prefix continued to work at least six and seven-day weeks. Without question, Defendant Prefix's claim that Plaintiff's termination was the result of a lack of work at the time of his discharge had no basis in fact or did not actually motivate its decision to terminate Plaintiff's employment.

Contrary to Defendant Prefix's contention, the fact that it may have terminated employees for lack of work many months *subsequent* to Plaintiff discharge is simply irrelevant to the inquiry whether its reason for terminating Plaintiff was pretextual *at the time of his discharge*. Thus, it is of

no moment that the Model Department in which Plaintiff worked went from six employees at the time that Plaintiff was terminated to one employee by the following year. For what is legally crucial is the reason given by Defendant Prefix *at the time of* Plaintiff's discharge and whether that reason was pretextual at the time that it was given. *Smith, supra*, 155 F.3d at 806.

## IV. DEFENDANT PREFIX'S DESIRE TO INCREASE ITS PROFITABILITY DOES NOT CONSTITUTE A LEGITIMATE, NONDISCRIMINATORY REASON FOR TERMINATING PLAINTIFF.

Besides its pretextual "lack of work" rationale, Defendant Prefix also claims as part of its litigation strategy that Plaintiff was terminated because it needed to reduce its work force to increase its profitability. Before addressing whether the "work force reduction to increase profitability" rationale is pretextual, there is a preliminary question about whether such a rationale even constitutes a *legitimate* nondiscriminatory reason for Plaintiff's discharge in the face of his prima facie case of retaliation under the FMLA.

As with any piece of social legislation, such as the FMLA, compliance comes at a cost. However, there is no authority, and Defendant Prefix can cite none, for the notion that an employer may adduce the desire for *increasing* profitability as a *legitimate* nondiscriminatory reason for terminating an employee exercising his right to take federally-protected FMLA leave. Were that the case, it would simply eviscerate the protections offered by the FMLA, as well as practically every other federal civil rights statute protecting employees from discriminatory treatment. The reason is that the costs of complying with these legal protections necessarily reduce an employer's profit margin to a certain extent, and thus an employer could always make more money simply by not complying with federal discrimination law. For that reason, it cannot be the case that an employer's mere desire to increase profitability counts as a legitimate nondiscriminatory reason for an adverse employment action once the plaintiff establishes a prima facie case of discrimination under federal law.

V. **EVEN IF DEFENDANT PREFIX'S DESIRE TO INCREASE ITS PROFITABILITY WERE CONSIDERED TO BE A LEGITIMATE NONDISCRIMINATORY REASON FOR TERMINATING PLAINTIFF, IT IS PRETEXTUAL BECAUSE DEFENDANT PREFIX WAS PROFITABLE AT THE TIME THAT IT DISCHARGED HIM.**

But even assuming contrary to fact and law that the "work force reduction to increase profitability" rationale constitutes a legitimate nondiscriminatory reason, there is no question that it was pretextual in this case. According to Mr. Closs, Defendant Prefix's goal in 2005 was to make $20 million. (Closs Dep, 63-64). Although Defendant Prefix claims lack of sufficiently desired profitability as the reason for Plaintiff's discharge, it is undisputed that at the time Plaintiff was discharged that Defendant Prefix was profitable in the months of July and August 2005. That was confirmed by Mr. Zeile, Defendant Prefix's President in his deposition testimony. (Zeile Dep, 39). Clearly, Defendant Prefix did not terminate Plaintiff for lack of profitability because at the time of his discharge the company was profitable and there was no shortage of work in the Model Department.

However, assuming for the sake of argument that Defendant Prefix's desire to increase its profitability was accepted as a legitimate nondiscriminatory reason for Plaintiff's discharge, Plaintiff is entitled to an opportunity to demonstrate that it is completely pretextual. When Plaintiff requested tax returns, a profit/loss statement or any documentation that supported Defendant Prefix's claim that the company was not profitable, Defendant Prefix objected and refused to provide them. Although Plaintiff moved to compel, Judge Feikens denied his motion. (Opinion and Order). Clearly, Plaintiff must have access to some sort of financial records necessary to show pretext. See *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir. 1978) ("A plaintiff who must shoulder the burden of proving that the reasons given for his discharge are pretextual should not normally be denied the information necessary to establish that claim.") To the extent that it is necessary, Plaintiff requests to discover financial data for the relevant time period in order to carry

8

his burden on the issue of pretext in the face of Defendant Prefix's purported legitimate, non-discriminatory motive for his discharge based on lack of profitability.

WHEREFORE, Plaintiff Jonathan Bell respectfully request that this Honorable Court grant its Motion in Limine and precluding the Defendant, Prefix Corporation, its agents, witnesses, representatives and attorneys from arguing, testifying to, making reference to or otherwise introducing any evidence regarding (1) "at will" employment status as a legitimate non-discriminatory reason to terminate while on FMLA leave; (2) alleged failure to achieve a certain level of profitability, when no profit/ loss statements or tax return were produced; (3) and Defendant's "lack of work" defense can be considered only at the time of discharge, August 8, 2005.

Respectfully submitted,

By: /s/Elmer L. Roller
ELMER L. ROLLER (P23592)
ELMER L. ROLLER P.C.
Lead counsel for Plaintiff
1760 S. Telegraph Road, Suite 300
Bloomfield Hills, MI 48302-0183
(248) 335-5000


By: /s/Gary P. Supanich
GARY P. SUPANICH (P45547)
GARY P. SUPANICH, PLLC
Co-counsel for Plaintiff
116 E. Washington
Suite 260
Ann Arbor, MI 48104
(734) 276-6561

Dated: July 6, 2009

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JONATHAN BELL,
  An Individual,

                    Plaintiff,

Case No. 05-74311-CV

Hon. Lawrence P. Zatkoff

V

PREFIX, INC.,
  A Michigan Corporation,

                    Defendant.
                                                                              /

| | |
|---|---|
| Elmer L. Roller (P23592)<br>Elmer L. Roller, P.C.<br>1760 S. Telegraph Road<br>Suite 300<br>Bloomfield Hills, MI 48302-0183<br>(248) 335-5000 | Linda Watson (P45320)<br>Clark Hill, PLC<br>151 S. Old Woodward Avenue<br>Suite 200<br>Birmingham, MI 48009<br>(248) 988-5881 |
| Gary P. Supanich<br>Gary P. Supanich, P.C.<br>116 E. Washington<br>Suite 260<br>Ann Arbor, MI 48104<br>(734) 276-6561 | |

                                                                              /

**PROOF OF SERVICE**

Elmer L. Roller states that on July 7, 2009, he electronically filed the following document with the Clerk of the Court using the ECF system:

- Plaintiff's Motion in Limine

this will send notification of such filing to:

**Linda D. Watson** (P45320)
CLARK HILL, PLC
151 S. Old Woodward Avenue
Suite 200
Birmingham, MI  48009

I declare under the penalties of perjury that I have examined this Proof of Service and that the contents thereof are true to the best of my information, knowledge and belief.

/s/Elmer L. Roller
Elmer L. Roller (P23592)
Elmer L. Roller, PC
1760 S. Telegraph Road
Suite 300
Bloomfield Hills, MI  48302-0183
(248) 335-5000