# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**JONATHAN BELL**,
      An Individual,

          Plaintiff,                Case No. 2:05-cv-74311-CV

v.                                    Hon. LAWRENCE P. ZATKOFF

**PREFIX, INC**,
      A Michigan Corporation,

          Defendant.

_____/

| | |
|---|---|
| **ELMER ROLLER** (P23592) | **LINDA M. WATSON** (P45320) |
| ELMER L. ROLLER P.C. | **MARIA FRACASSA DWYER** (P60946) |
| Attorney for Plaintiff | CLARK HILL PLC |
| 1760 S. Telegraph, Suite 3000 | Attorneys for Defendant |
| Bloomfield Hills, MI 48302-0183 | 255 S. Old Woodward Ave., Third Floor |
| (248) 335-5000 | Birmingham, MI 48009 |
| | (248) 988-5881 |
| **GARY P. SUPANICH** (P45547) | |
| GARY P. SUPANICH PLLC | |
| Attorney for Plaintiff | |
| 116 E. Washington, Suite 260 | |
| Ann Arbor, MI 48104 | |
| (734) 276-6561 | |

## <u>PLAINTIFF'S MOTION TO ADJUST OR AMEND THE JURY VERDICT AND</u>

## <u>JUDGMENT  MITIGATION DAMAGES</u>

NOW COMES the Plaintiff, Jonathan Bell, by and through the auspices of his attorneys, Elmer L. Roller and Gary P. Supanich, and pursuant to Fed. R. Civ. P. 59(e), submits this motion to Amend or Alter the Judgment and  the Jury Verdict, and in support says as follows:

1.      On November 9, 2009 trial in the instant case commenced and concluded on November 18, 2009 with a jury verdict in favor of Plaintiff with an award of $14,563 in damages.

2.      Plaintiff's Complaint sought both legal and equitable relief for retaliation in taking FMLA Intermittent unpaid leave from Defendant, Prefix Corporation. In particular, in addition to requesting liquidated damages, and general equitable relief, Plaintiff also requested "[a]order reinstating Plaintiff to an appropriate employment position with Defendant"; and "[a]n injunction prohibiting any further acts of wrongdoing, discrimination, or retaliation"

3.      At trial it was undisputed that Plaintiff earned $22/hour as a DQ&V Senior Technician assigned to the Model Department, but qualified, cross-trained, and worked in the Plastics, Paint, Interior Trim, Milling, Prototype, and Specialized Precision Models departments.

4.      The parties stipulated and Plaintiff made an offer of trial proof that Mr. Bell was entitled to fringe benefits (401(k), medical and dental insurance, life insurance policy, etc.) which was equal to 17.35% of his base wage.

5.      As adjusted to account for fringe benefits, while employed at Prefix, he was earning $25.85 per hour or, without overtime, $1,034 per week.

6.      The jury awarded  approximately 13.9 weeks of compensation or until approximately November 18, 2005.

7.      On or about November 18, 2005 was when Plaintiff obtained a **Temporary** job with Design Intent, making $22/hour but without **Any** fringe benefits and with **No** paid overtime.

8.      As a matter of law and fact, the Design Intent employment  position was not "same or substantially similar"  or even "equivalent" to the Prefix employment position, from which Plaintiff was discharged.

9.      From August 5, 2005 to at least December 31, 2005, Plaintiff's duties and work load was assumed by Peter Rossman, Dan  Provo and/or Michael Lange so that Defendant Prefix replaced Plaintiff after his termination.

2

10.    During trial, Defendant Prefix offered evidence solely as to the reduction of workers in the Model Department and did not introduce any evidence that Plaintiff could have been placed in the Plastics, Paint, Interior Trim, Milling, Prototype, or Specialized Precision Models departments.

11.    At trial, the testimony of Dan Closs, Jimmy Turner and Phil Serra confirmed that Prefix was working 10-12 hours each day, for 6 or 7 day per week.

12.    In the only financial reports produced by Prefix[1], the Detail Cost Reports on which Plaintiff was working at time of his termination (Trial Exhibits 43-53) for Projects 05-3039 (Tooling for F-150); 05-3034 (Interior Tub); 05-3018 (Headlamp Housing); 05-3016 (Headlamp Model & Ext Panels); 05-3040 (Cup Holder); 05-2990 (Interior Cubing Buck); 05-2975 (Hood Surround); 05-2973(Seating Buck); 05-2978 (Exterior Cubing Buck); 05-2882 (Plug Gages); and 05-2861 (Interior Cubing Fixture) reflect more than 10,000 man hours of work to be performed. There was no question that there was sufficient work for Plaintiff to perform.

13.    The Project Load Report (Trial Exhibit 38) reflected more than 143 active projects at Prefix, available to assign Plaintiff.

14.    The jury's verdict is inherently based on Plaintiff having mitigated his damages as a result of his acceptance of a non-fringe benefit and no-overtime position, which was not the "same", "substantially similar" or the equivalent position.

15.    The experts testified and Plaintiff agreed, that from August 8, 2005 through trial, Plaintiff earned $54,737[2], which should be deducted from the compensation Mr. Bell's total back

---

[1] Although Plaintiff subpoenaed updated Project Load Reports and Detailed Cost Reports from Mr. Zeile, he produced none. The reports which had been produced during discovery (Trial Exhibits 43-53, 38) inherently did not extend past December 2005.
[2] Defendant's Expert's calculated Mr. Bell's full mitigated earnings through trial was $54,737. Trial Exhibit 136, Schedule C-3. However, of this amount $4, 216 was attributed to a theorized part-time work with Pinnacle. Id. Schedule C-1, footnote 4. Nevertheless, the work for Pinnacle had been completed before Plaintiff was terminated. Adjusting Bell's mitigated earnings for the $4,216 error results in a full mitigated earnings of $50, 521.

pay award.

16.     Mr. Bell's back pay award should have continued to run through trial and the gross amount was $224,823[3], when, after adjusted for his mitigation efforts ($54,737) was $174, 302.

17.     Mr. Serra's discharge of Mr. Bell was intentional and willful, Plaintiff is entitled, pursuant to 28 USC § 2617 (a)(1)(A)(iii); 29 C.F.R. §800.400(c), to liquidated damages, or $170,086 plus statutory interest.

18.     Since Mr. Bell's complaint seeks reinstatement and with reinstatement not practicable under Prefix's hostile employment atmosphere, this Honorable Court should award front pay, as a substitute for impracticability of attempting to restore Plaintiff to employment at Prefix.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court Amend and Adjust the Judgment to reflect a back pay award of $174,302; liquidated damages in the amount of $174, 302  and an award of front pay of $174, 302 in lieu of equitable reinstatement, together with an award of costs, interests and attorney fees.

Respectfully submitted,


/s/ Gary P. Supanich_____        /s/ Elmer L. Roller_____

Gary P. Supanich (P45547)        Elmer L. Roller (P23592)
GARY P. SUPANICH PLLC        ELMER L. ROLLER, P.C.
116 E. Washington, Suite 260        1760 South Telegraph Road, Suite 300
Ann Arbor, MI 48104        Bloomfield Hills, MI 48302-0183
(734) 276-6561        (248) 335-5000

Dated: December 7, 2009

---

[3] Trial Exhibit 101, Exhibit 1 therein.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**JONATHAN BELL**,
      An Individual,

          Plaintiff,                    Case No. 2:05-cv-74311-CV

v.                                     Hon. LAWRENCE P. ZATKOFF

**PREFIX, INC**,
      A Michigan Corporation,

          Defendant.

_____/

| | |
|---|---|
| **ELMER ROLLER** (P23592) | **LINDA M. WATSON** (P45320) |
| ELMER L. ROLLER P.C. | **MARIA FRACASSA DWYER** (P60946) |
| Attorney for Plaintiff | CLARK HILL PLC |
| 1760 S. Telegraph, Suite 3000 | Attorneys for Defendant |
| Bloomfield Hills, MI 48302-0183 | 255 S. Old Woodward Ave., Third Floor |
| (248) 335-5000 | Birmingham, MI 48009 |
| | (248) 988-5881 |
| **GARY P. SUPANICH** (P45547) | |
| GARY P. SUPANICH PLLC | |
| Attorney for Plaintiff | |
| 116 E. Washington, Suite 260 | |
| Ann Arbor, MI 48104 | |
| (734) 276-6561 | |

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO ADJUST OR AMEND THE JURY**

**VERDICT AND JUDGMENT  MITIGATION DAMAGES**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................ ii

BRIEF OF LAW ............................................................................................................1

    Statement of Facts ...................................................................................................1

ARGUMENTS ...............................................................................................................2

   I.     PLAINTIFF'S  FMLA BACK PAY AWARD COULD NOT BE CUT OFF
        WITH THE ACCEPTANCE OF THE DESIGN INTENT JOB. .................................2

   II.    PLAINTIFF'S ACCEPTANCE OF EMPLOYMENT WITH DESIGN
        INTENT DID NOT OPERATE TO TERMINATE THE BACK PAY
        PERIOD ...............................................................................................5

      A.  The Back Pay Recovery Period Continued ...............................................5

      B.  The Design Intent Position was not Comparable or Substantially Equivalent ..........5

      C.  Plaintiff Never Abandoned his Job Search .................................................7

   III.   FMLA DAMAGES ...............................................................................................7

      A.  Prejudgment Interest .............................................................................8

      B.  Liquidated Damages .............................................................................8

      C.  Front Pay .............................................................................................9

      D.  Attorney Fees .....................................................................................11

   IV.   DEFENDANT PREFIX ENGAGED IN A WILLFUL VIOLATION OF THE
        FMLA ...............................................................................................12

RELIEF REQUESTED ...............................................................................................14

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Arban v. West Pub. Corp.*, 345 F.3d 390 (6th Cir. 2003) ...............................................13

*Archambault v. United Computing Systems, Inc.*, 786 F.2d 1507 (11th Cir. 1986) .......................8

*Brenlla v. LaSorsa Buick Ponitac Chevrolet, Inc.,* 2002 US Dist. LEXIS 9358, at 41-
42, 7 WH Cases2d 1688 (SDNY Nov 28, 2002) .......................................................14

*Brewser v. Martin Marietta Aluminum Sales, Inc.*, 145 Mich App. 641, 378 NW.2d
558 (1985) ...........................................................................................................4

*Calcote v. Texas Educational Foundation, Inc.*, 458 F. Supp. 231 (WD Tex. 1976),
aff'd, 578 F.2d 95 (5th Cir. 1978).........................................................................7

*Cavin v. Honda*, 346 F.3d 713 (6th Cir. 2004) ...........................................................11

*Churchill v. Star Enters.,* 183 F.3d 184, 5 WH Cases2d 753 (3d Cir. 1999) ..........................10, 11

*Claiborne v. Illinois Cent. R. R.*, 583 F.2d 143 (5th Cir. 1978)............................................6

*Cline v. Wal-Mart Stores*, 1444 F.3d 294, 4 WH Cases2d 1185 (4th Cir. 1998) .........................11

*Daniel v. Loveridge*, 32 F.3d 1472 (10th Cir. 1994)..........................................................7

*Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 7 WH Cases.2d 1537 (8th Cir. 2002) ...............16

*Edwards v. Ford Motor Co.,* 179 F. Supp. 2d 714, 7 WH  Cases2d 663 (WD Ky.
2001) ...................................................................................................................15

*EEOC v. Exxon Shipping Co.*, 745 F.2d 967 (5th Cir. 1984) ..........................................6

*Estes v. Meridian One Corp.*, 6 Fed Appx 142 (4th Cir. 2001)...........................................9, 13, 14

*Ford Motor Co. v. EEOC*, 458 US. 219 (1982) ..........................................................6

*Ford v. Nicks*, 866 F.2d  865 (6th Cir. 1989)..............................................................6

*Forthergill v. McKay Press*, 374 Mich 138, 132 NW.2d 144 (1965).............................................3

*Griffin v. George B. Buck Consulting Actuaries, Inc*, 566 F. Sup. 881 (SD NY 1983) ................7

*Hensely v. Eckerhart,* 461 US 424 (1983) ...................................................................14

*Higgins v. Lawrence*, 107 Mich App. 178, 309 NW.2d 194 (1981)..............................................3

*Hoffman v. Professional Med. Team,* 394 F.3d 414, 10 WH Cases, 2d 289 (6th Cir.
2005) ...................................................................................................................10

*Hogue v. Honda of Am. Mfg.,* 384 F.3d 238, 9 WH Cases2d 1665 (6th Cir. 2004) .......................10

*Johnson v. Georgia Highway Express,* 488 F.2d 714 (5th Cir. 1974).........................................14

*Katch v. Speidel*, 746 F.2d 1136 (6th Cir. 1984) ................................................................3

*Kelley v. Airborne Freight*, 140 F.3d 335 (1st Cir.1998) ............................................13

*Kosakow v. New Rochelle Radiology Assocs.*, P.C. 274 F.3d 706, 7 WH Cases2d 906 (2d Cir. 2001)................................................................................................16

*McAnnally v. WYN S. Molded Prods., Inc.*, 912 F. Supp. 512 WH Cases2d 433 (ND Ala. 1996) ................................................................................................9

*McDonnell v. Miller Oil Co.*, 134 F.3d 638; 4 WH Cases2d 545 (4th Cir. 1998)..............10, 13, 14

*McIntosh v. Jones Truck Lines, Inc.*, 767 F.2d 433 (8th Cir. 1985) ...........................................7, 8

*Mclaughlin v. Mercury Freight Lines, Inc.*, 472 F.2d 1406 (5th Cir. 1973)...................................7

*Michigan Employment Relations Commission v Kleen-O-Ram*a, 60 Mich App 61, 230 NW.2d 308 (1975) ................................................................................................3

*Miller v. AT& T Corp.*, 250 F.3d 820, 6 WH Cases.2d 1754 (4th Cir. 2001) ...........................3, 12

*Nararro v. General Nutrition Corp.*, 2004 US Dist. Lexis 24258, at 5-7 (N.D. Cal. No. 19, 2004) ................................................................................................13

*Passauer v. Quest Diagnostics, Inc.*, 2004 US Dist. LEXIS 6966, at 5-7, 9 WH Cases.2d 1070 (D. Md. April. 22, 2004).........................................................15

*Pegues v. Mississippi State Employment Service*, 899 F.2d 1449 (5th Cir. 1990) .........................8

*Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81 (2002) ......................................................11

*Rasheed v. Chrysler Corp.*, 445 Mich 109, 517 NW.2d 19 (1994) ...........................................3, 4

*Rasimas v. Michigan Dep't of Mental Health*, 714 F.2d 614 (6th Cir. 1983) ...............................3

*Rice v. Sunrise Express, Inc.*, 237 F. Supp.2d 962 (ND Ind. 2002)..............................................13

*Riethmiller v. Blue Cross & Blue Shield*, 151 Mich App 188, 390 NW.2d 277 (1986)................4

*Rogers v. AC Humko Corp.*, 56 F. Supp.2d 972 (W.D. Tenn. 1999)...........................................11

*Sampson v. Citibank*, 53 F. Supp. 2d 13, 5 WH Cases2d 841 (DDC 1999) ................................16

*Shepherd v. Honda*, 160 F. Supp.2d 860 (SD Ohio 2001)...........................................................14

*Sherry v. Protection, Inc.*, 14 F. Supp. 2d 1055, 4 WH Cases.2d 1598 (ND. Ill. 1998)...............14

*Shore v. Federal Express Corp.*, 777 F.2d 1155 (6th Cir. 1985)............................................3, 13

*Smith v. Diffee Ford-Lincoln-Mercury*, Inc., 298 F.3d 955, 7 WH Cases.2d 1802 (10th Cir. 2002)................................................................................................10

*Taylor v. Invacare Corp.*, 64 Fed. Appx. 516 (6th Cir. 2003).....................................................12

*Uffleman v. Lone Star Steel Co.*, 863 F.2d 404 (5th Cir. 1989).....................................................7

*Washington v. Kroger Co.*, 506 F. Supp. 1158 (WD Mo. 1981), vacated on other grounds, 671 F.2d 1072 (8th Cir. 1982)..................................................................8

*Wheeler v. Snyder Buck, Inc.*, 794 F.2d 1228 (7th Cir.1986) ........................................7

*Williams v. Pharmacia,* 137 F.3d 944 (7th Cir.1998)..................................................12

*Woolridge v. Marlene Indus. Corp.*, 875 F.2d 540 (6th Cir. 1989) ..................................4

**Statutes**

29 C.F.R. § 825.214(a)...................................................................................................10

29 CFR §825.400 (c).........................................................................................................7

29 U.S.C. § 2617(a)(1).....................................................................................................9

29 U.S.C.A. § 2617(a)(1)(B) ..........................................................................................10

29 USC § 2617 (a)(1)(A) .................................................................................................7

29 USC § 2617(a)(1)(B) ...................................................................................................8

29 USC § 2617(a)(3).......................................................................................................11

29 USC §2617 (a)(1)(A)(iii)............................................................................................8

# BRIEF OF LAW

## Statement of Facts

The Jury's Verdict is inherently based on a determination that Plaintiff had fully mitigated his damages from August 8, 2005 to November 26, 2005. The only employment Plaintiff accepted in November was with Design Intent, which strictly limited Plaintiff's compensation to $22/hour, with no fringe benefits or overtime. The parties stipulated that Plaintiff's fringe benefits were worth 17.35% the hourly wage or additionally $3.85/hour. Without attributing any amount to overtime, Plaintiff's adjusted hourly pay was $25.81.

Acceptance of a $22/hour temporary contract job[4] with Design Intent was insufficient, with no fringe benefits or paid overtime,  as a matter of law and fact, to constitute a complete mitigation of Plaintiff's damages and discontinue the back pay period from continuing to run. The Jury's obvious focus on the Design Intent position fatally infected its determination of  back pay damages stopping at $14,563.  After deducting the amount of $54,737 Plaintiff earned in the back pay period, the net back pay owed Mr. Bell was $170,086.

There seems now to be little dispute that Mr. Serra terminated Plaintiff, and did so willfully and intentionally. During the time Phil Serra was his General Manager, Plaintiff's absences were excused, either under the FMLA or by Prefix awarding Plaintiff two vacation days. Plaintiff is entitled to an award of liquidated damages, together with an award of his attorney fees and costs because Mr. Serra retaliated against Mr. Bell.

Plaintiff has made diligent efforts to mitigate his damages since his discharge.   Even though he has found part-time, short-term and sporadic jobs, he has not found a position that is substantially equivalent to the position from which he was discharged at Prefix.  In the Detroit metropolitan area, he has contacted nearly every design/manufacturing facility to obtain

---

[4] Plaintiff received a Form 1099, as opposed to a W-2 he received from Prefix.

1

employment as a trained Model Maker, working as a DQ&V technician, where he would use his "quality control" and "verification" skills, under circumstances where he would work on automotive products in Paint, Plastics, Special Vehicle, Milling and Metal Fabrication Departments. He has searched for work outside of Michigan. He has been consistently hampered by most prospective employers inquiring into the circumstances by which he left Prefix.  Mr. Bell has attempted to explain the circumstances of his Prefix discharge. He has truthfully disclosed that he was discharged and is ineligible for rehire. Nevertheless, prospective employers only fixate on the fact that he was not laid off, but discharged. With such a stigma, in general they have been unwilling to consider him. Mr. Bell seeks reinstatement to his Prefix employment position.[5]

After his discharge Plaintiff attempted to find a similar employment position. Prefix has complicated Plaintiff's job search since he was "discharged" and, either by way of background checks or truthfully disclosing the circumstances of his last employment. He is at a competitive disadvantage with similarly qualified job applications because of being "fired." Nevertheless, he has persisted in his campaign to reclaim a full time, fringe-benefit job, paying him comparably to what he earned, immediately before his discharge.

## ARGUMENTS

## I.    PLAINTIFF'S  FMLA BACK PAY AWARD COULD NOT BE CUT OFF WITH THE ACCEPTANCE OF THE DESIGN INTENT JOB.

Plaintiff has been continuously looking for an employment position similar to the one he held at Prefix. He is not required to change occupations, accept a demotion, or take a demeaning position. He has been making a good-faith effort to obtain full-time employment. *Miller v. AT&*

---

[5] On its website, Prefix freely indicates that it has employment opportunities for "model makers." Trial Exhibit 92 at page 52.

*T Corp.*, 250 F.3d 820, 839, 6 WH Cases.2d 1754 (4th Cir. 2001).   It is undisputed herein that Defendant Prefix has never attempted to reinstate or tender a similar job to him.

Failure to mitigate is an affirmative defense, which must be proved by the employer. *Higgins v. Lawrence*, 107 Mich App. 178, 309 NW.2d 194 (1981); *Michigan Employment Relations Commission v Kleen-O-Ram*a, 60 Mich App 61, 230 NW.2d 308 (1975); *Rasheed v. Chrysler Corp.,* 445 Mich 109, 517 NW.2d 19 (1994). The burden of proving that a plaintiff failed to mitigate rests on the defendant employer. *Katch v. Speidel*, 746 F.2d 1136 (6th Cir. 1984); *Forthergill v. McKay Press*, 374 Mich 138, 132 NW.2d 144 (1965).

Whether a particular employee's efforts are reasonable is evaluated in the light of the individual's skills and the job market. *Rasimas v. Michigan Dep't of Mental Health*, 714 F.2d 614, 624 (6th Cir. 1983). Mr. Bell was obliged only to accept employment of a "like nature" (i.e. times, hours, compensation rate, fringe benefit, tenure and working conditions."). In *Rasimas,* the Court ruled that the term "substantial equivalent" did not include a part-time position at a lower wage for an uncertain term, which did not provide for use of the worker's skills, as he had previously enjoyed. The Court reiterated its position in *Shore v. Federal Express Corp.*, 777 F.2d 1155 (6th Cir. 1985). In *Shore*, the Court looked beyond the duties of the new position and focused on whether it afforded the plaintiff "virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status." *Id.* at 1158. Similarly, in *Rasheed*, the Michigan Supreme Court affirmed that a plaintiff is not required to accept an employment position that is an unreasonable distance from home or one that is not substantially equivalent of that from which he was terminated. It is the employer's burden to establish that the plaintiff did not mitigate.   An employer must present proof that there were substantially

equivalent positions available and that a plaintiff failed to use reasonable care and diligence in finding them.[6] *Woolridge v. Marlene Indus. Corp.*, 875 F.2d 540 (6th Cir. 1989).

Even where the duties and salary of a new position are the same, the proffered position may not be considered the "substantial equivalent" of the former position. The duty to mitigate does not require an employee to accept a position with the same duties and salary where there were no fringe benefits. *Riethmiller v. Blue Cross & Blue Shield*, 151 Mich App 188, 390 NW.2d 277 (1986).

Following his wrongful discharge on August 8, 2005, Plaintiff has continually sought employment and has worked sporadically to mitigate his damages. He accepted a position with Design Intent, hoping that his former supervisor at Prefix, Terry Hopkins, would be able to subsequently offer fringe benefits. Plaintiff worked for Design Intent solely as an hourly paid temporary contract employee, without any fringe benefits or paid overtime. At Prefix, Mr. Bell had been cross-trained and, in addition to the DQ&V department, performed his "quality control" and verification services in the Plastics, Paint, Milling and Special Vehicle departments. He thus sought reinstatement to an equivalent position with Defendant in one of the departments in which he had previously worked. So even assuming arguendo that Defendant reduced the number of individuals in the Plastics Division by June 30, 2006, Defendant did not even attempt to demonstrate that there was no work in the four (4) other departments for him to perform.

At trial, Plaintiff produced an extensive Journal (Trial Exhibit 90) of his efforts to find work which was the same, similar or equivalent to what he had at Prefix. Moreover, he testified that because he was "Terminated", as opposed to being simply "laid off" he faced other competitive problems, as having a 'stain' on his work history. The stain continues to present and

---

[6] In *Brewser v. Martin Marietta Aluminum Sales, Inc.*, 145 Mich App. 641, 378 NW.2d 558 (1985), the Michigan Court of Appeals found that a jury could properly find that an offer of demotion, and a refusal of that offer did not support a finding of failure to mitigate.

Prefix has not undertaken any efforts to eradicate the "ball and chain" it has added to Plaintiff's ability to obtain comparable employment.

## II.    PLAINTIFF'S ACCEPTANCE OF EMPLOYMENT WITH DESIGN INTENT DID NOT OPERATE TO TERMINATE THE BACK PAY PERIOD

### A.    The Back Pay Recovery Period Continued

After Plaintiff's August 8, 2005 termination until the present, Plaintiff has never found employment which was "comparable" to the DQ &V Technician he had at Prefix. At Prefix, he earned $22/hour and had significant fringe benefits, which the parties were valued at 17.35% of his base hourly rate. This total compensation package at Prefix was worth $25.81, including the overtime (greater than 40 hours per week) he received. In October 2005 he accepted a $22/hour and NO fringe benefit, TEMPORARY and NO overtime job at Design Intent. In awarding $14,563 the Jury determined that Plaintiff's back pay ended when he accepted the Design Intent position. The Design Intent position was not "comparable" or "substantially equivalent" to the Prefix position. Defendant was entitled to a credit for the wages earned at Design Intent. However, Plaintiff's back pay did not terminate with the acceptance of the Design Intent position. It continued.

### B.    The Design Intent Position was not Comparable or Substantially Equivalent

For a job to be "comparable" or "substantially equivalent" to the job the Plaintiff lost, the new job must be consistent with the Plaintiff's skills, background or experience, and afford him virtually identical promotional opportunities, compensation, job responsibilities, working condition and status. *Ford Motor Co. v. EEOC*, 458 US. 219 (1982); *Ford v. Nicks*, 866 F.2d 865 (6th Cir. 1989); *EEOC v. Exxon Shipping Co*., 745 F.2d 967 (5th Cir. 1984). Courts use the same definition of substantially equivalent employment when evaluating whether a victim has

mitigated his losses by exercising reasonable diligence in seeking employment with other employers. Had Plaintiff Bell rejected a bona fide offer of employment, which factually he did not, the back pay  period continues if special circumstances or exceptional reasons exist to warrant rejection of the offer, depending on the circumstances of the offer and reasons for rejection. *Claiborne v. Illinois Cent. R. R.*, 583 F.2d 143 (5th Cir. 1978).

In the instant situation, the only evidence submitted at trial related to Plaintiff rejecting an offer of employment for $17/hour with no fringe benefits when he was then employed at Design Intent making $22/hour with no fringe benefits. Mr. Bell was under no duty to accept employment that was not equivalent in total compensation to his Prefix position. His acceptance of a lower paying position at Design Intent does not end the back pay period. *McIntosh v. Jones Truck Lines, Inc.*, 767 F.2d 433 (8th Cir. 1985).  This continuation of the back pay period applied when Mr. Bell accepted a lower paying employment after unsuccessful efforts to obtain comparable employment. See *Uffleman v. Lone Star Steel Co.*, 863 F.2d 404 (5th Cir. 1989). Herein, Mr. Bell never accepted an offer of employment which was equal or higher paying that his former Prefix position. His back pay claim continued. *Calcote v. Texas Educational Foundation, Inc.*, 458 F. Supp. 231 (WD Tex. 1976), aff'd, 578 F.2d 95 (5th Cir. 1978); *Mclaughlin v. Mercury Freight Lines, Inc.*, 472 F.2d 1406 (5th Cir. 1973). As a matter of law, the back pay period did not end when Mr. Bell accepted a lower paying employment. See *Daniel v. Loveridge*, 32 F.3d 1472 (10th Cir. 1994); *Wheeler v. Snyder Buck, Inc.*, 794 F.2d 1228 (7th Cir.1986); *Griffin v. George B. Buck Consulting Actuaries, Inc*, 566 F. Sup. 881 (SD NY 1983). Mr. Bell could accept a lower paying employment from another employer and he can continue to recover back pay until Prefix makes an offer of substantially equivalent employment. *Uffelman supra*.  Prefix has never made such an offer.

6

C.    Plaintiff Never Abandoned his Job Search

Mr. Bell has never abandoned his search for substantially equivalent employment. His back pay recovery period continued through trial. *McIntosh*, *supra*. Assuming arguendo that Prefix ceased its discriminatory practice, Mr. Bell's back pay recovery period would not be cut off. *Pegues v. Mississippi State Employment Service*, 899 F.2d 1449 (5th Cir. 1990).

At trial, Mr. Bell testified that he could have been retained in comparable employment positions within the Plastics, Paint, Interior Trim, Milling, Prototype, or Specialized Precision Models departments. Prefix had an opportunity and did not rebut his contentions. *Archambault v. United Computing Systems, Inc.*, 786 F.2d 1507 (11th Cir. 1986). The fact that Mr. Bell's model maker position may have been eliminated was irrelevant to the determination of the period for which he was entitled to back pay since, at the time of trial, the reason for his discharge was he was not a "Ball Buster". *Washington v. Kroger Co.*, 506 F. Supp. 1158 (WD Mo. 1981), vacated on other grounds, 671 F.2d 1072 (8th Cir. 1982) .

## III.   FMLA DAMAGES

Any covered employer that violates the FMLA act is liable to the affected eligible employee for damages equal to:

> (i)    the amount of:
>
> (I)    any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation; or
> (II)    in a case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care, up to a sum equal to 12 weeks of wages or salary for the employee;
> (ii)    the interest on the amount described in clause (i) calculated at the prevailing rate; and
> (iii)    an additional amount as liquidated damages.

29 USC § 2617 (a)(1)(A); see 29 CFR §825.400 (c).

Liquidated damages amounts to the amount described in clause (i) and the interest described in clause (ii). The FMLA further provides for equitable relief as may be appropriate, including employment, reinstatement and promotion. 29 USC § 2617(a)(1)(B).

Mr. Bell is entitled to recover an amount "equal to the amount of" any denied or lost compensation. When he was discharged Mr. Bell's wages were $46,000 and he was receiving benefits worth $7,980 for a total of $53,980. As of January 1, 2009 his accumulated losses would be $224,823. As of January 1, 2010, it will be $282,014.[7]

The compensation awardable under Section 107 (a)(1)(A) consists of wages, salary, employment benefits, or "other compensation." This "other compensation" would include bonuses or commission. *McAnnally v. WYN S. Molded Prods., Inc.,* 912 F. Supp. 512, 513 WH Cases2d 433 (ND Ala. 1996); *Estes v. Meridian One Corp.*, 6 Fed Appx 142 (4th Cir. 2001).

A.    Prejudgment Interest

Plaintiff is also entitled to a prejudgment award. Pursuant to 29 USC §2617(a)(1)(A) (ii); 29 CFR §825.400c, prejudgment interest is available. *Smith v. Diffee Ford-Lincoln-Mercury,* Inc., 298 F.3d 955, 961, 7 WH Cases.2d 1802 (10th Cir. 2002); *Churchill v. Star Enters.,* 183 F.3d 184, 193, 5 WH Cases2d 753 (3d Cir. 1999); *McDonnell v. Miller Oil Co.,* 134 F.3d 638, 640; 4 WH Cases2d 545 (4th Cir. 1998).

B.    Liquidated Damages

Under the FMLA, the statue is explicit that Mr. Bell's liquidated damages award is based on the total compensation, including interest. 29 USC §2617 (a)(1)(A)(iii). Defendant Prefix cannot demonstrate that it took objectively reasonable grounds to comply with FMLA's standards. *Hoffman v. Professional Med. Team,* 394 F.3d 414, 419-20, 10 WH Cases, 2d 289 (6th Cir. 2005); *Hogue v. Honda of Am. Mfg.,* 384 F.3d 238, 251, 9 WH Cases2d 1665 (6th Cir. 2004).

---

[7] Trial Exhibit 101, exhibit 1 therein (Zimmerman's Report)

C.    <u>Front Pay</u>

This Honorable Court has discretion to grant Mr. Bell an amount of future earnings, or front pay, instead of reinstatement. *Smith v. Diffee Ford-Lincoln-Mercury, Inc.,* 298 F.3d 955, 964, 7WH Cases2d 1802 (10th Cir. 2002); *Nichols v. Ashland Hosp. Corp.*, 251 F.3d 496, 503-04, 6 WH Cases.2d 1801 (4th Cir. 2001); *Churchill v. Star Enters.*, 183 F.3d 184, 193 , 5 WH Cases.2d 753 (3d Cir. 1999); *Cline v. Wal-Mart Stores*, 1444 F.3d 294, 307, 4 WH Cases2d 1185 (4th Cir. 1998); *Rogers v. AC Humko Corp.,* 56 F. Supp.2d 972,978 (W.D. Tenn. 1999). At trial it was evident that he could not return and should not be placed back into such a hostile working environment, which would predictably discharge him again. Changing of his work record to reflect "laid off" rather than "termination" and an award of front pay is the most practicable method to address Plaintiff's request for equitable relief.

An employee who prevails in a civil suit brought pursuant to FMLA is entitled to both damages and appropriate equitable relief, "including employment, reinstatement, and promotion." 29 U.S.C. § 2617(a)(1).  As noted by the Sixth Circuit in *Cavin v. Honda*, 346 F.3d 713, 726 (6th Cir. 2004), quoting from *Ragsdale v. Wolverine World Wide, Inc*., 535 U.S. 81, 88-90 (2002):

> § 2617 provides no relief unless the employee has been prejudiced by the violation:  The employer is liable only for compensation and benefits lost "by reason of the violation," § 2617(a)(1)(A)(i)(I), for other monetary losses sustained "as a direct result of the violation," § 2617(a)(1)(A)(i)(II), and for "appropriate" equitable relief, including employment, reinstatement, and promotion, § 2617(a)(1)(B).  The remedy is tailored to the harm suffered.

Since his wrongful discharge on August 8, 2005, Plaintiff has continually sought employment and has worked sporadically to mitigate his damages.  Plaintiff has never stopped looking for work and has continuously sought to mitigate his damages by working on temporary jobs.  See *Taylor v. Invacare Corp.*, 64 Fed. Appx. 516 (6th Cir. 2003) (noting that absent a

showing that an employee failed to use reasonable diligence in seeking out equivalent positions after he was discharged, the employee is entitled to back pay under the FMLA). Accordingly, there is absolutely no basis in law or fact to preclude Plaintiff from seeking economic damages under the FMLA. See *Miller v. AT & T Corp.*, 250 F.3d 820 (4th Cir. 2001) (affirming an award of back pay under the FMLA to a terminated employee where the employer failed to prove that she had not mitigated her damages by seeking other employment).

> As provided for by 29 U.S.C. § 2614(a)(1), an employee who takes FMLA leave "shall be entitled, on return from such leave
>
> (A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or
>
> (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment."

See 29 C.F.R. § 825.214(a) (noting that an employee is entitled to be reinstated to the same position, or to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment, that the employee held when the employee's FMLA leave commenced after FMLA leave ends).

In addition, the pertinent statute states that any employer who violates the FMLA "shall be liable to any eligible employee affected . . . for such equitable relief as may be appropriate, including employment, reinstatement, and promotion." 29 U.S.C.A. § 2617(a)(1)(B). Front pay is designed to provide an equitable remedy when it is impractical to order the employee's reinstatement to his or her previous job. *See Williams v. Pharmacia,* 137 F.3d 944, 952 (7th Cir.1998); *Kelley v. Airborne Freight,* 140 F.3d 335, 354 (1st Cir.1998). As explained by the Sixth Circuit in *Arban v. West Pub. Corp.*, 345 F.3d 390, 406 (6th Cir. 2003),

> While the determination of the precise "amount of an award of front pay is a jury question," the initial "determination of the propriety of an award of front pay is a matter

for the court." *Roush v. KFC Nat'l Mgmt. Co.,* 10 F.3d 392, 398 (6th Cir. 1993) (ADEA claim) . . .

Ultimately, the question to be answered is whether front pay damages are needed in a particular case to make the plaintiff whole." *Wilson v. Int'l Bro. of Teamsters,* 83 F.3d 747, 756-57 (6th Cir.1996). Several factors must be considered when determining the propriety of an award of front pay, including "an employee's duty to mitigate, the availability of employment opportunities, the period within which one by reasonable efforts may be re-employed, the employee's work and life expectancy, the discount tables to determine the present value of future damages and other factors that are pertinent on prospective damage awards." *Roush,* 10 F.3d at 399 (quoting *Shore v. Federal Express Corp.,* 777 F.2d 1155, 1160 (6th Cir.1985)).

D.    Attorney Fees

The FMLA provides that the Court "shall, in addition to any judgment awarded to the Plaintiff, allow a reasonable attorney fees , reasonable expert fees, and other costs of the action to be paid by the defendant."  29 USC § 2617(a)(3). The Courts have interpreted the word "shall" to mandate attorneys' fees and expert witness fees. See *McDonell v. Miller Oil Co.,* 134 F.3d 638, 640, 4 WH Cases2d 545 (4th Cir. 1998); *Nararro v. General Nutrition Corp.,* 2004 US Dist. Lexis 24258, at 5-7 (N.D. Cal. No. 19, 2004); *Rice v. Sunrise Express, Inc.,* 237 F. Supp.2d 962, 969 (ND Ind. 2002); *Estes v. Meridian One Corp*., 77 F. Supp.2d 722, 727, 6 WH Cases.2d 1708 (ED Va. 1999), aff'd., 6 Fed. Appx. 142 (4th Cir. 2001); *Sherry v. Protection, Inc.,* 14 F. Supp. 2d 1055, 1057, 4 WH Cases.2d 1598 (ND. Ill. 1998).   The lodestar method is the method for calculating reasonable attorney fees.  This method is based on "the number of hours reasonably expended on the litigation multiplied by a reasonably hourly rate." *Hensely v. Eckerhart,* 461 US 424, 433 (1983); *McDonnell v. Miller Oil Co.,* 134 F.3d 638, 640, 4 WH Cases.2d 545 (4th Cir. 1998); *Brenlla v. LaSorsa Buick Ponitac Chevrolet, Inc.,* 2002 US Dist. LEXIS 9358, at 41-42, 7 WH Cases2d 1688 (SDNY Nov 28, 2002); *Shepherd v. Honda*, 160 F. Supp.2d 860, 874 (SD Ohio 2001); *Estes v. Meridian One Corp*., 77 F. Supp. 2d 722, 727-28, 6 WH  Cases.2d 1708 (ED. Va. 1999), aff'd, 6 Fed Appx 142 (4th Cir. 2001).

When applying the loadstar method, courts must still determine whether to adjust the fee upward or downward by applying additional factors bearing on the reasonableness of the award given the circumstances of the particular case. *Hensely, supra*. When considering the reasonableness of a fee award under the FMLA, courts apply a 12-factor test adopted by the U.S. Supreme Court, decided under the Civil Rights Attorney's Fees Award Act of 1976. The Supreme Court adopted the *Hensely v. Eckerhart*, 461 US 424, 429-30, 430 n.3, which adopted the 12 factor test created by the Fifth Circuit in *Johnson v. Georgia Highway Express,* 488 F.2d 714, 717-19 (5th Cir. 1974). The 12 factors are:

    (1)    the time and labor required;

    (2)    the novelty and difficulty of the question

    (3)    the skill  requisite to perform the legal service properly

    (4)    the preclusion of other employment by the attorney due to acceptance case

    (5)    the customary fee

    (6)    whether the fee is fixed or contingent

    (7)    time limitations imposed by the client or circumstances

    (8)    the amount involved and the results obtained

    (9)    the experience, reputation and ability of the attorney

    (10)    the "undesirability" of the case

    (11)    the nature and length of the professional relationship with the client

    (12)    awards in similar cases

Plaintiffs will submit separate motions regarding attorney fees, prejudgment interest, liquidated damages, front pay and attorney fees.

## IV.   DEFENDANT PREFIX ENGAGED IN A WILLFUL VIOLATION OF THE FMLA

When it discharged Plaintiff Bell, Defendant Prefix engaged in a "willful" violation of the FMLA. A willful violation is established where an employer knew or showed reckless disregard for whether its conduct was prohibited by the statute. *Passauer v. Quest Diagnostics, Inc.,* 2004 US Dist. LEXIS 6966, at 5-7, 9 WH Cases.2d 1070 (D. Md. April. 22, 2004); *Edwards v. Ford Motor Co.,* 179 F. Supp. 2d 714, 719, 7 WH Cases2d 663 (WD Ky. 2001); *Sampson v. Citibank,* 53 F. Supp. 2d 13, 19, 5 WH Cases2d 841 (DDC 1999). In the instant proceeding, equitable estoppel bars Prefix from contesting Plaintiff Bell's entitlement to FMLA leave. Before his August 8, 2005 discharge that FMLA leave was available and Mr. Bell relied on the representations. See *Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 493, 7 WH Cases.2d 1537 (8th Cir. 2002); *Kosakow v. New Rochelle Radiology Assocs.,* P.C. 274 F.3d 706, 728, 7 WH Cases2d 906 (2d Cir. 2001).

At trial, Defendant did not present evidence of whether Plaintiff would have lost his job as of June 30, 2006 as part of Defendant's presumed RIF in his department. First, it is important to underscore that there is no evidence that Defendant implemented a RIF at the time of Plaintiff's discharge or thereafter. Thus, Defendant's claim that Plaintiff's economic damages should be cut off as of June 30, 2006 rests upon an unsupported factual assumption that there was a RIF in effect.

But even assuming *arguendo* that Defendant had implemented a RIF in Plaintiff's department, Defendant did not demonstrate how it directly affected Plaintiff. He worked primarily as a DQ&V technician, Model Maker assigned to Defendant's DQ&V department. Depending on the particular job and state of design or construction, his "quality" and "verification" services were used not only in his own department but in the Paint, Plastics, Milling, and Special Vehicle departments. Here, a reasonable jury could only conclude that

Plaintiff would have been restored to an equivalent position as to support his claim for front pay damages. Finally, Defendant provides no evidence that Plaintiff would have been laid off or terminated as of June 30, 2006. *See Dole v. Elliott Travel & Tours, Inc.,* 942 F.2d 962, 968-69 (6th Cir.1991) (noting that an unsworn affidavit cannot be used to support or oppose a motion for summary judgment). Accordingly, Plaintiff is entitled to recover economic damages from the date of his wrongful discharge continuing to the present day.

## **RELIEF REQUESTED**

Plaintiff respectfully requests that this Honorable Court Amend and Adjust the Judgment to reflect a back pay award of $174,302; liquidated damages in the amount of $174,302 and an award of front pay of $174,302 in lieu of equitable reinstatement, together with an award of costs, interests and attorney fees

Respectfully submitted,

/s/ Gary P. Supanich            /s/ Elmer L. Roller

Gary P. Supanich (P45547)       Elmer L. Roller (P23592)
GARY P. SUPANICH PLLC           ELMER L. ROLLER, P.C.
116 E. Washington, Suite 260    1760 South Telegraph Road, Suite 300
Ann Arbor, MI 48104             Bloomfield Hills, MI 48302-0183
(734) 276-6561                  (248) 335-5000

Dated: December 7, 2009

## **PROOF OF SERVICE**

Elmer L. Roller states that on December 7, 2009, he electronically filed the following document with the Clerk of the Court using the ECF system:

• Plaintiff's Motion to Adjust or Amend the Jury Verdict and Judgment Mitigation Damages

this will send notification of such filing to:

**Linda D. Watson**  (P45320)
**Maria F. Dwyer (**P60946)
CLARK HILL, PLC
151 S. Old Woodward Avenue
Suite 200
Birmingham, MI  48009

      I declare under the penalties of perjury that I have examined this Proof of Service and that the contents thereof are true to the best of my information, knowledge and belief.

/s/Elmer L. Roller
Elmer L. Roller (P23592)
Elmer L. Roller, PC
1760 S. Telegraph Road
Suite 300
Bloomfield Hills, MI  48302-0183
(248) 335-5000