**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JONATHAN BELL,

     Plaintiff,

                                           Case No. 05-74311

v.                                     Hon. Lawrence P. Zatkoff

PREFIX, INC.,

     Defendant.

_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on March 22, 2011.

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I.  INTRODUCTION**

This matter is before the Court on Plaintiff's motion for attorney's fees and costs [dkt 144].  The parties have fully briefed the motion.[1]  The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument.  Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted.  For the following reasons, Plaintiff's motion for attorney's fees is GRANTED IN PART and DENIED IN PART.

---

1  The Court GRANTS Plaintiff's ex parte motion for leave to file excess pages [dkt 152] and accepts Plaintiff's 10-page reply brief.

## II.  BACKGROUND

Plaintiff filed this case alleging that Defendant terminated his employment in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*.  On November 18, 2009, a jury returned a verdict in favor of Plaintiff and awarded him $14,563 for monetary losses suffered through the date of the verdict.  The jury declined to award Plaintiff front-pay damages.  The Court subsequently granted Plaintiff statutorily-mandated liquidated damages and pre-judgment interest on his damages.

In his motion for attorney's fees and costs, Plaintiff requests a total award of $512,953.43.  Attorney Roller has submitted documentation in the form of three separate invoices, which in total request $264,222 (880.74 hours at $300.00/hr) and incurred costs and advances totaling $23,204.32.  Attorney Supanich has submitted documentation detailing attorney's fees of $199,500 (798 hours at $250.00/hr) and incurred costs of $1,200.58.  As the submitted invoices only total $488,126.90, the Court's analysis shall be based on the amount of $488,126.90.[2]  Plaintiff also seeks an award of sanctions under Fed. R. Civ. P. 11 and 28 U.S.C. § 1927.

## III.  ANALYSIS

### A.  Attorney's Fees

The FMLA requires that the court "*shall*, in addition to any judgment awarded to the plaintiff, allow a *reasonable* attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant."  28 U.S.C. § 2617(a)(3) (emphasis added).  Unlike other

---

2.  Attorney Roller's invoices indicate balances due of $76,157.11, $64,459.52, and $147,345.69.  Attorney Supanich's invoice indicates a balance due of $199,500 in attorney's fees and $1,200.58 in costs.  It is unclear how Plaintiff arrived at the $512,953.43 figure.  In addition, there appears to be a slight discrepancy ($526.00) between Attorney Roller's invoice totals and the figures reached by adding Attorney Roller's claimed hours.  Because it is not the Court's duty to correct Attorney Roller's mathematics, the Court will proceed using Attorney Roller's claimed hours.

civil-rights statutes, where attorney's fee awards are discretionary, *see, e.g.*, 42 U.S.C. § 1988, a plaintiff prevailing under the FMLA is entitled to his reasonable attorney's fee.  Despite this difference, "courts have analyzed motions for attorney's fees under the FMLA in the same way as motions for attorney's fees under other civil rights statutes."  *Navarro v. Gen. Nutrition Corp.*, No. C-03-0603SBAEMC, 2004 WL 2648373, at *2 (N.D. Cal. Nov. 19, 2004).

"The most useful starting point for determining the amount of a reasonable fee is the number of hours *reasonably* expended on the litigation multiplied by a *reasonable* hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (emphasis added).  "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly."  *Id.*

The Sixth Circuit has approved the consideration of the twelve factors first enunciated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), when analyzing the reasonableness of a requested fee.  *See Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999).  The *Johnson* factors are:

> (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

488 F.2d at 717-19.

**1. The *Johnson* Factors**

3

Because the parties provided only a cursory review of the *Johnson* factors, the Court will not address each factor in great detail. However, it will briefly summarize the facts and happenings relevant to its award of attorney's fees.

This has been a lengthy case, lasting over four years from the date of filing to the verdict. Two district court judges have been involved in this case: Judge Feikens, who handled the case until it was remanded from the Sixth Circuit, and the undersigned, to whom the case was reassigned at that time. After a successful appeal to the Sixth Circuit by Plaintiff, the case culminated in a six-day jury trial. Although the FMLA is a broad and complicated statute, this case, including the key issue on appeal, centered on a factual dispute; specifically, whether Defendant's stated reason for termination was pretext for FMLA discrimination.

This case required an average amount of legal skill, including motion practice, appellate briefing and oral argument presentation, and trial skills. Attorneys Roller and Supanich exhibited those skills. Their resumes indicate many years of experience in the law, and their reputation has not been questioned. However, the boundaries of civility were often exceeded in this matter, which blame is attributable to counsel for both parties. In fact, this was a rare case where there was far more animosity between the attorneys than the parties themselves.

Plaintiff contends that Attorney Roller and Attorney Supanich turned down other business based on this case. No evidence to support this contention has been submitted, but as they were involved in this case for an extended period of time, the Court finds that at least some of their attention and efforts would have been directed elsewhere or to other clients if they had not been working on this matter. Plaintiff also states, without discussion or support, that this case was "undesirable," but the Court finds no reason to assume that a rather ordinary

4

employment-discrimination case is inherently undesirable. Plaintiff also represents that he agreed to a contingency-based fee agreement, which is customary when representing employees in employment-discrimination litigation. The Court agrees with Plaintiff that his contingency agreement should not affect the award of a statutory attorney's fee. *See, e.g.*, *Darbyshire v. Garrison*, No. 04-cv-72272, 2006 WL 581032, at *2 (E.D. Mich. Mar. 8, 2006) (finding no reason that a statutory attorney's fee award should be capped at the amount realized by a contingency-fee agreement). Finally, there is no evidence that Plaintiff enjoyed a professional relationship with his counsel prior to this case.

The parties focus much of their analysis on the amount of success Plaintiff achieved in this litigation. At trial, Plaintiff's requested damages were either $350,000 (Plaintiff's recollection) or $400,000 (Defendant's recollection). The jury awarded Plaintiff back-pay damages of $14,563, and it declined to award front-pay damages. Regardless of whose memory is correct, Plaintiff received <u>far</u> less than what he sought under either figure. Plaintiff was subsequently granted liquidated damages of $14,563, and pre-judgment interest, which the Court has recently confirmed as $182.43. Thus, Plaintiff's total recovery was $29,490.48.

Defendant contends that granting Plaintiff his requested attorney's fees would result in a windfall, because Plaintiff was awarded "nominal" damages. Although the jury's verdict was significantly less than requested, the Court cannot characterize it as "nominal." Nominal damages are awarded to vindicate rights when no showing of actual injury has been proven. *Carey v. Piphus*, 435 U.S. 247, 266 (1978); *see also* Black's Law Dictionary 418 (8th ed. 1999). Here, the jury awarded Plaintiff damages based on the actual injury suffered. Although the jury awarded significantly less than requested, it does not change the nature of those damages from

5

actual to nominal.  Therefore, the Court will not reduce Plaintiff's attorney's fees simply for a lack of success.

In conclusion, the Court's consideration of the ten *Johnson* factors discussed above supports neither an enhancement nor a reduction of attorney's fees.  The Court now turns to the first and twelfth *Johnson* factors as it analyzes the lodestar fee to which Plaintiff is entitled, a fee based on hours *reasonably expended* at a *reasonable hourly rate*.  For the reasons stated below, and after analyzing the invoices submitted by Attorney Roller and Attorney Supanich to ensure that the hours billed and hourly rates are reasonable, the Court concludes that it must reduce the hourly rates for both attorneys and <u>dramatically</u> reduce number of hours billed by both attorneys.

### 2.  Reasonable Hourly Rates

The FMLA's attorney-fee provision requires that the attorney's fees be awarded at a reasonable rate.  *See* 28 U.S.C. § 2617.  "In short, a reasonable hourly rate should be sufficient to encourage competent lawyers in the relevant community to undertake legal representation." *Lamar Adver. Co. v. Charter Twp. of Van Buren*, 178 Fed. Appx. 498, 501-02 (6th Cir. 2006) (citing *Blum v. Stenson*, 465 U.S. 886, 894-94 (1984)).

The Court relies on the State Bar of Michigan's 2007 Economics of Law Practice Survey ("the Survey") as evidence of a reasonable billing rate in this district.  Michigan federal courts routinely use this publication as evidence of reasonableness in determining attorney's fees.  *See Int'l-Matez Tank Terminals-Ill. v. Chemical Bank*, No. 1:08-cv-1200, 2010 WL 3238917, at *6 (W.D. Mich. Aug. 16, 2010); *Meyer v. Macomb Twp. of Macomb Cnty., Mich.*, No. 06-14953, 2010 WL 891268, at *2 n.3 (E.D. Mich. Mar. 10, 2010);  *Asmar v. Benchmark Literacy Grp., Inc.*, No. 04-70711, 2007 WL 925623, at *3 (E.D. Mich. Mar. 28, 2007).

6

Attorney Roller has been a licensed attorney for 37 years. Attorney Supanich has been a licensed attorney for 19 years. They seek fees for their work at respective hourly rates of $300 and $250. The Survey indicates that the median billing rate of litigation attorneys with the tenure of Attorneys Roller and Supanich is $200. Likewise, the mean litigation rate for law firms is $200.77, and the 50th percentile rate is $195.00. Accordingly, the Court finds that: (a) an hourly billing rate of $200.00 is reasonable for this type of representation,[3] and (b) such a rate will sufficiently encourage competent representation in FMLA cases in this community.

### 3. Grossly Excessive Hours

The Court has carefully, and repeatedly, reviewed the billing records of both Attorney Roller and Attorney Supanich. Based on the Court's experience with similar FMLA cases, in particular *Barrett v. Detroit Heading, LLC*, No. 05-72341, 2009 WL 3465366 (E.D. Mich. Oct. 23, 2009), as well as the Court's experience overseeing litigation cases for the past thirty years, the Court is astonished by the billing records submitted by Attorney Roller and Attorney Supanich. The sheer number of hours claimed by both attorneys significantly exceeds the number of hours the Court has ever been asked to compensate a party in any similarly contested action, whether it be an FMLA action, a Section 1983 civil rights action or otherwise. In other words, the Court finds that the hours claimed are unreasonable and excessive and, as such, must be adjusted accordingly.

In this case, the Court addresses the reasonableness of the hours billed by Attorney Roller and Attorney Supanich first from the standpoint of specific instances of excessive and/or

---

3The Court also notes that the Sixth Circuit upheld this Court's determination of reasonable rates of $170 and $180 for trial and appellate attorneys, respectively, in an FMLA action decided in 2007. *See Barrett v. Detroit Heading, LLC*, No. 05-72341, 2009 WL 3465366 (E.D. Mich. Oct. 23, 2009).

unreasonable billing by Attorney Roller and Attorney Supanich and then, more importantly, based on the global number of hours set forth in their invoices.

     *a.     Specific Instances of Excessive Billing by Attorney Roller*

Attorney Roller submitted three separate billing statements, documenting that he exerted 228.50 hours (pre-appeal), 192.93 hours (on appeal), and 495.31 hours (post-appeal and trial) during the respective billing periods. From these documents, the Court has identified many billing entries that are clearly unreasonable and/or incorrect and must be adjusted dramatically. By way of example only, and certainly not in any manner by way of completeness, the Court notes the following entries by Attorney Roller that are grossly over billed or inappropriate altogether. Each entry includes: (1) the date the work allegedly was performed, (2) the hours billed by Attorney Roller, (3) the description of the work provided in the invoice, and (4) the Court's assessment of what a reasonable period of time to conduct the activity would be.

### i. Pre-Appeal:

1. November 28, 2005 - (1.1 hours billed) combined time for receipt and review of opposing counsel appearances (.1 hours is reasonable because each document is one page and self-explanatory)

2. January 18, 2006 - (.5 hours billed) receipt and review of notice of oral argument (.1 hours billed is reasonable because the document is one page and requires little review)

3. March 22, 2006 - (1.4 hours billed) receipt and review of opinion and order denying motion to dismiss (.9 hours is reasonable to review this 4-page document)

4. April 19, 2006 - (1.0 hours billed, plus a portion of another 2.1 hours billed) receipt and review of stipulated order extending discovery (.2 hours is reasonable for review of this two-page order that the parties stipulated to)

5. May 5, 2006 - (1.3 hours billed) receipt and review of order denying a motion to compel (.3 hours is reasonable to review a one-and-a-half page document)

8

6. August 22, 2006 - (1.0 hours billed) receipt and review of order to extend scheduling dates (all of this time is unreasonable because no new order regarding scheduling dates had been entered since March 22, 2006)

7. September 5, 2006 - (1.0 hours billed) receipt and review of notice to appear for scheduling conference by .8 hrs (.2 hours is reasonable time to review a one-page document)

8. February 7, 2007 - (1.0 hours billed) receipt and review of order lifting stay (.1 hours is reasonable to review a three-line order)

9. March 16, 2007 - (.3 hours billed) receipt and review of an ex-parte order allowing Defendant to file brief which exceeds 5 pages (.1 hours is reasonable time to review 5-line order)

10. April 5, 2007 - (2.3 hours billed) receipt and review of Defendant's motion to strike Plaintiff's supplemental response brief in opposition to summary judgment (.5 hours is reasonable time to review 4-line motion and 1 ½ page brief)

11. May 14, 2007 - (1.5 hours billed) receipt and review of order denying Defendant's motion to strike (.2 hours is reasonable time to review one-page document)

12. May 14, 2007 - (.5 hours billed) receipt and review of Notice of Hearing (.1 hours is reasonable time to review this one-page document)

13. August 3, 2007 - (total of 6.3 hours billed) receipt and review of Defendant's motion for bill of costs, which included an 8-page supporting brief and 7 exhibits (3 hours is reasonable time to review, especially as there were several other entries when he worked on/addressed this motion)

14. August 22, 2007 - (total of 2.4 hours billed) prepare Notice of Appeal (.5 hours is reasonable)

**Total pre-appeal hours billed for foregoing entries:       21.6 hours**

**Reasonable pre-appeal hours for foregoing entries:        6.3 hours**

  **ii. Appeal:**

1. July 23, 2007 - (1.1 hours billed) receipt and review of opinion and order granting summary judgment (no time was reasonable because activity was billed on prior statement for same date)

2.  August 22, 2007 - (1.3 hours billed) draft and preparation of Notice of Appeal (no time was reasonable because activity was billed on prior statement for same date)

3.  November 28, 2007 - (.4 hours billed) receipt and review of certificate of service from Deputy Clerk (.1 hours is reasonable time to review a certificate of service)

4.  December 10, 2007 - (.5 hours billed) receipt and review of notice from Clerk's Office re: Defendant's Appeal (.1 hours is reasonable time to review notice of appeal)

5.  December 10, 2007 - (2.4 hours billed) receipt and review of Appearance, Civil Statement, and Transcript Order, Claim of Appeal (.4 hours is reasonable time because at least partially double billed and otherwise excessive)

6.  May 9, 2008 - (total of 1.1 hours billed) receipt and review of order granting consolidation of cases (.3 hours is reasonable time to review order)

7. September 8, 2008 - (1.2 hours billed) receipt and review Notice of Oral Argument (.2 hours is reasonable time to review notice)

8. October 20, 2008 - (3.5 hours billed) travel to Cincinnati for oral argument (no time is reasonable because this was double billed - there was an entry for his travel on the prior day)

9.  October 22, 2008 - (4.5 hours billed) travel from Cincinnati for oral argument (no time is reasonable because there were two entries of 4.5 hours for travel on this day)

**Total appellate hours billed for foregoing entries:        16.0 hours**

**Reasonable appellate hours for foregoing entries:          1.1 hours**

### iii. Post Appeal/Trial:

1.  August 21, 2009 - (3.1 hours billed) receipt and review of Defendant's motion for leave to file answer and affirmative defenses (no time is reasonable because this task was completed and billed on August 12, 2009)

2.  November 4, 2009 - (2.0 hours billed) preparation for final pre-trial conference (no time was reasonable as the conference took place on October 15, 2009 and an entry billing this time had already been made)

3.  November 5, 2009 - (.7 hours billed) travel time to Detroit for jury selection (no time was reasonable because this entry was double billed)

4.   November 5, 2009 - (total of 4.2 hours billed) travel, appearance, and client conference for final pre-trial conference (no time was reasonable because the conference took place on October 15, 2009 and an entry billing this time had already been made)

5.   November 27, 2009— (2.7 hours billed) draft and preparation of motion to adjust verdict (no time was reasonable because this entry was double billed)

**Total post-appeal hours billed for foregoing entries:       13.7 hours**

**Reasonable post-appeal hours for foregoing entries:          0.0 hours**

### iv.  Total Deductions for Entries Identified Above

Although the ratio of hours billed to reasonable hours permitted for the foregoing entries (50.3/7.4) is not necessarily reflective of every entry made by Attorney Roller, the foregoing entries do evidence a pattern of sloppy billing, erroneous billing and billing <u>much</u> more time than is reasonable or necessary to perform many tasks.  The Court must take all of these considerations into account when determining how many hours were reasonably necessary to litigate Plaintiff's cause of action.

### b.     *Specific Instances of Excessive Billing by Attorney Supanich*

Attorney Supanich's invoice statements invoke different, but equally serious, concerns regarding the accuracy of his stated time.  First, as opposed to Attorney Roller's appropriate use of one-tenth hour billing increments, the lowest increment utilized by Attorney Supanich is one-quarter (.25) hour.  The vast majority of the 22 instances where Attorney Supanich billed only for .25 hours (for a total of 5.5 hours) involved the review of documents or telephone conversations that most likely took far less than 15 minutes to complete.  As previously determined by this Court (and upheld on appeal), it is appropriate and necessary to reduce such .25 increments by .15 hour to reflect tenth-hour billing.  *See, e.g., Barrett v. Detroit Heading, LLC*, No. 05-72341, 2009 WL 3465366, at *3 ("[T]he Court does not believe that it is

11

appropriate to mandate that Defendant pay Plaintiff attorney fees for every .2 increment billed by Plaintiff's counsel simply because that is the manner in which Plaintiff's counsel elected to enter his time."). As a result, the Court would consider only 2.2 hours of the 5.5 hours of .25 hour billings to be reasonably billed. Of course, the fact that Attorney Supanich bills in .25 hour segments rather than .10 hour segments is not simply a problem with respect to those entries which were only .25 hours. Rather, the .25 hour entries (and the lack of any other incremental billings) demonstrate that Attorney Supanich billed in .25 hour increments throughout his invoices. As such, he may have, and likely did, frequently bill .5 hours (rather than .3 or .4 hours) for 20 minutes work, .75 hours (rather than .6 or .7 hours) for 35-40 minutes of work or 1.0 hours (rather than .8 or .9 hours for 50-55 minutes of work. In other words, the likelihood of over billing (for purposes of determining a reasonable attorney fee in FMLA cases) is quite high when an attorney such as Attorney Supanich bills in .25 hour segments. Based on a review of Attorney Supanich's invoices, however, the Court cannot identify with specificity each and every instance where this problem likely occurred.

Second, between November 3, 2007, and November 7, 2007, Attorney Supanich recorded 22.25 hours to prepare a statement of facts for an appellate brief. As the response brief to Defendant's motion for summary judgment previously prepared by Attorney Roller contained five pages of facts, there is no reasonable justification for an additional 22.25 hours to prepare a statement of facts. The Court finds that, under the circumstances in this case, 8 - 10 hours is a far more reasonable number of hours necessary to prepare a statement of facts. Although this is definitely not the only instance of such billing, it is the easiest to identify and illustrate herein.

12

Third, despite not being retained until Plaintiff filed his notice of appeal, Attorney Supanich's total recorded hours are nearly equal to Attorney Roller's, even though Attorney Roller had expended over 225 of his billed hours prior to the time Attorney Supanich was retained. For that reason alone, it is inexplicable that Attorney Supanich billed only 80 hours less than Attorney Roller did. The similarity in hours is even more puzzling and inexplicable when one considers that, at trial, Attorney Roller, and not Attorney Supanich, (1) was the lead attorney, (2) questioned all (or nearly all) the lay witnesses, and (3) handled the opening and closing arguments.

       *c.*     *General Billing Problems*

There are several general billing problems that plague the billings submitted by both Attorney Roller and Attorney Supanich. First, both attorneys frequently utilized non-descript "block-billing" in their entries. In other words, for many entries it is not possible for the Court to ascertain what the attorney was doing. By way of example, not limitation, Attorney Roller made numerous entries of five and six-hour blocks for "trial preparation." Likewise, the vast majority of Attorney Supanich's recorded time is in a block-billing format. While the Court cannot adequately analyze the reasonableness of such billing in each instance, many entries appear to reflect an unreasonable amount of time for a single activity. In the Sixth Circuit, the law is clear that significant reductions in time are appropriate where block billing is used. *See, e.g., Auto Alliance Int'l v. U.S. Customs Serv.*, 155 Fed. Appx. 226, 228 (6th Cir. 2005) (affirming 25% overall reduction for excessive and block billing); *Gratz v. Bollinger*, 354 F. Supp. 2d 929, 939 (E.D. Mich. 2005) ("As a result of such 'block billing,' the Court is not able

to determine the number of hours expended on each discrete task. Thus, the Court cannot determine whether the number of hours billed are reasonable.").

The second global concern with Plaintiff's invoiced hours is the obvious duplication of efforts. Attorney Supanich was hired to handle the appellate proceedings, yet Attorney Roller billed for review of Attorney Supanich's work and attendance at the appellate proceedings. Attorney Roller handled all of the argument and most of the questioning at trial, yet Attorney Supanich billed for all of that time. Likewise, once Attorney Supanich entered the case, the division of work on motion practice is unclear. Moreover, both Attorney Roller and Attorney Supanich billed a significant amount of time for activity that consisted only of telephonic and in-person conversations with each other. While a party is certainly entitled to having two attorneys represent him, the Court finds that it is not reasonable to consistently bill a party for two attorneys to do the same work/review each other's work.[4] *See Reed v. Rhodes*, 179 F.3d 453, 472 (6th Cir. 1999) (citation omitted) (affirming a district court's reduction of a claim of attorney's fees by a factor of 20% and 50% where the district court's review of the documentation of hours was inadequate to "identify distinct claims and the issues addressed, assess the necessity for multiple counsel, and distinguish between redundant, unnecessary, and duplicated work effort"); *Wayne v. Village of Sebring*, 36 F.3d 517, 532-33 (6th Cir. 1994) (holding that the lower court may determine that an indefinite number of hours claimed by the attorneys may be reduced for being excessive or duplicitous); *Coulter v. State of Tenn.*, 805 F.2d 146, 152 (6th Cir. 1986)

---

4. By way of example, and not limitation, on October 11, 2007, Attorney Roller billed 1.7 hours for reviewing Judge Feikens' Opinion and Order denying Defendant's motion for bill of costs, Rule 11 sanctions and attorney fees. On the same date, Attorney Supanich billed 1.1 hours (a more reasonable period for the seven page opinion) for reviewing the same thing. As this seven page ruling favored their client and required no follow up work whatsoever, such duplicitous billing was not necessary, nor was it reasonable.

(approving 50% across-the-board reduction of certain claimed fees based on concerns of duplication of effort).

Although it is not easy to identify each and every instance of excessive and unreasonable billing amongst the invoices submitted by Attorney Roller and Attorney Supanich, comparing the billings submitted by Attorney Roller and Attorney Supanich with the billings submitted (and approved) in *Barrett* reveals the global excessiveness and unreasonableness of the billed hours in this case. In *Barrett*, the pre-trial activity required to litigate the plaintiff's case included: (a) filing the complaint, (b) engaging in a period of discovery, and (c) briefing the parties' cross-motions for summary judgment. No appeal was taken by either party when the Court denied their respective motions for summary judgment. Thus, after the case survived the summary judgment stage, the plaintiff's counsel had to: (1) attend and participate in a status conference (which required the preparation of a joint final pretrial order and joint jury instructions), (2) file and/or brief ten motions in limine, (3) prepare for trial, (4) try a three-day trial, and (5) await the jury deliberations for about a day. Thereafter, Defendant appealed the jury verdict and the Sixth Circuit heard and decided the appeal, ultimately ruling in favor of the plaintiff in all respects. Upon deciding the plaintiff's motion for attorney fees following trial and again following the appeal, the Court found that it was reasonable to bill 272 hours for pre-appeal work and 70 hours for appellate work. In addition, the Court determined that the plaintiff's trial attorney would be awarded fees at $170/hour and his appellate attorney should be awarded fees at $180/hour. Thus, the Court awarded the plaintiff aggregate attorney fees of approximately $59,000 ($46,257 in attorney fees for pre-appeal work, $12,548 in attorney fees for appellate work) and costs of approximately $6,500.

In this case, the pre-trial activity required to prosecute Plaintiff's case included: (a) filing the complaint; (b) engaging in a period of discovery; (c) filing a response brief to Defendant's motion to dismiss, (d) filing a response brief to Defendant's summary judgment motion, and (3) filing an appellant brief and reply when appealing the order of Judge Fiekens granting Defendant's summary judgment motion. Then, after the Sixth Circuit remanded the case, Plaintiff's counsel had to: (1) attend and participate in a status conference (which required the preparation of a joint final pretrial order and joint jury instructions), (2) file and/or respond to six motions in limine, (3) prepare for trial, (4) try a six-day trial, and (5) await the jury deliberations for about a day. For the foregoing tasks, Attorney Roller and Attorney Supanich have represented that they worked 880 and 798 hours, respectively, on this case. Stated another way, Attorney Roller (22 40-hour weeks) and Attorney Supanich (20 40-hour weeks) claim that they worked a total of 42 weeks on this case. This is the equivalent of one person working exclusively on this case for 11 months. As a result, Plaintiff now seeks approximately $465,000 in attorney's fees and $24,000 in costs. In other words, Plaintiff seeks approximately eight times as much in attorney's fees as the plaintiff did in *Barrett*.

As both of these cases were litigated before this Court, the Court is aware of the similarities and differences between the cases. Overall, they were very similar as far as the issues litigated and the activity required, as the foregoing summary of the case timelines and activity demonstrate. There were two key differences between this case and *Barrett*, however, which were: (1) the appellate issues in *Barrett* were more complicated and, therefore, required more work, and (2) in this case, Plaintiff's counsel had to litigate three more trial days (six days

16

rather than three days) and, for purposes of this Opinion the Court assumes, engage in more discovery to litigate the case. The Court addresses each of these differences in turn.

### i.      Appellate Hours

In *Barrett*, one of the key appellate issues paralleled the *sole* appellate issue in this case. In each case, the applicable plaintiff briefed summary judgment motions in the district court centered on whether the plaintiff had established the prima facie elements for an FMLA case. In this case, Plaintiff also briefed in his response to Defendant's summary judgment motion the issues of whether Defendant articulated a legitimate and nondiscriminatory reasons for Plaintiff's discharge and whether such articulated reason was mere pretext for FMLA discrimination. As such, when the applicable plaintiff briefed the same issue(s) on appeal, it stands to reason that it should not have been necessary for counsel to recreate the wheel in either case. In other words, extensive research time and/or drafting of the briefs would be unreasonable. In both cases, the Sixth Circuit ruled in favor of the plaintiff.

The striking difference between the appeals of the two cases was that, in *Barrett*, the plaintiff also had to address the following issues that had not been researched and briefed in the district court: (a) the defendant's challenge to the judgment rendered by the jury (*i.e.*, whether the evidence admitted at trial was sufficient to support the verdict), (b) the Court's denial of the defendant's motion for judgment as a matter of law, and (c) the Court's exclusion of a proposed interrogatory for the jury verdict form submitted to the district court by the defendant. In other words, there were far more "new" issues to research and brief on the *Barrett* appeal than for the appeal in this case. The length of the Sixth Circuit opinions in the respective cases (15 pages in this case and 35 pages in the *Barrett* case), as well as the discussion of the issues in each

17

opinion, reflect the discrepancy in the number of issues addressed in each case. Nonetheless, in this case, Attorney Roller claims approximately 190 hours for appellate work and Attorney Supanich claims approximately 350 hours for appellate work, for a total of approximately 540 hours. By comparison, only 70 hours were approved by the Court for appellate work in *Barrett* (and the plaintiff's attorneys sought only 82 hours total for appellate work). Thus, the attorneys in this case claim that they worked about 460-470 hours more on preparing and arguing Plaintiff's appeal than the plaintiff's attorneys did in *Barrett*. In different terms, even though there were more issues to address in *Barrett*, the number of hours the attorneys in this case claim that they dedicated to the appeal is more than seven times (and nearly eight times) the number of hours the *Barrett* attorneys claimed for pursuing the appeal in that case. The difference is, to say the least, startling and, in itself, demonstrates the unreasonable and excessive nature of the attorney's fees requested by Plaintiff.

For the foregoing reasons, including the frequent instances of block billing, duplicitous billing and unreasonable and excessive billing in general, the Court find that the 540 hours claimed for appellate work by Attorney Roller and Attorney Supanich must be reduced by 440 hours in order to reflect a more reasonable number of hours for appellate work. *See Auto Alliance, Gratz, Reed, Village of Sebring* and *Coulter, supra. See also Tinch v. City of Dayton*, 199 F.Supp. 2d 758 (S.D. Ohio 2002) (across the board reductions are appropriate where a court ascertains numerous occurrences of excessive billing and/or misbillings because such reductions serve to account for similar instances that are not so easily ascertainable by the court). Thus, the Court shall approve 100 hours for appellate work in this matter. Although this is a reduction of approximately 80%, the reason the reduction is unusually substantial is that the excessive billing

18

is so egregious.  Moreover, and more importantly, the Court finds that an attorney's fee award based on 100 hours reasonably reflects the necessary work required for appellate counsel for a case of this nature.  In fact, as 100 hours is almost 50% more hours than the Court determined to be reasonable in *Barrett*, where there were more issues to research, analyze and brief, 100 hours is probably a generous, and not simply a reasonable, number of hours to approve.

### ii.    Non-Appellate Hours

As noted above, there were approximately twice as many trial days in this case than in *Barrett*, and the Court assumes that more discovery was required in this case than in *Barrett*. Thus, it is reasonable to expect that the attorneys in this case would claim more hours for non-appellate work than the trial attorney did in *Barrett*, and Attorney Roller and Attorney Supanich certainly did so.  Nonetheless, in this case, each of Attorney Roller and Attorney Supanich claimed that he, individually, worked <u>many</u> more hours on this case than the sole trial attorney did in *Barrett*.  As discussed above, the trial attorney in *Barrett* sought 284 hours in his motion for attorney's fees (of which the Court determined 272 hours were reasonable), whereas Attorney Roller (nearly 725 hours) and Attorney Supanich (353 hours) seek 1078 hours for non-appellate work.  In other words, the attorneys in this case claim almost exactly four times the number of hours for non-appellate work sought by the trial attorney in *Barrett*.

Although the disparity in non-appellate work is only half as outrageous as the disparity for the appellate work, the fact that the attorneys in this case claim four times the number of hours sought by the trial attorney in *Barrett* further evidences the wholly unreasonable and excessive amount of hours sought by Plaintiff.  For example, even if the Court generously assumes that this case required one and one-half times as much discovery and other non-

19

appellate work for Plaintiff's counsel as was reasonably necessary for the plaintiff's attorney in *Barrett*, there is a vast difference between the claimed attorney hours as it pertains to the non-appellate work in the two cases.

Based on the manner in which Attorney Roller and Attorney Supanich compiled their invoices, the Court is unable to determine whether the attorneys for Plaintiff actually needed one and one-half times as much time for discovery as the plaintiff's attorney did in *Barrett*. In fact, the Court finds it more likely than not that the non-appellate work in this case should not have required one and one-half times the hours billed by the plaintiff's attorney in *Barrett*. The examples of egregious over billing, duplicitous billing and phantom billing (whether intentional or not) described in Sections III.A.3.a. and III.A.3.b. above are indicative of how the claimed hours are so grossly inflated and unreasonable.

The Court also notes that the animosity between the attorneys in this case permeated the litigation process. Not infrequently, the bounds of civility and reasonable argument and positioning were ignored as the respective counsel doggedly dug in their heels, no matter the cost to the parties and/or the waste of judicial resources.[5] As noted above, the Court observed that counsel for **both** Plaintiff and Defendant were at fault for such conduct. If the poor conduct were attributable solely to Defendant, the Court might find that awarding Plaintiff some attorney's fees for time devoted to addressing frivolous and needlessly contentious issues reasonable. Under the circumstances of this case, however, the Court concludes that it would be unreasonable to award - or charge - attorney's fees for such "work" because such "work" was not necessary.

---

5 Plaintiff's request for an award of sanctions under Fed. R. Civ. P. 11 and 28 U.S.C. § 1927, discussed in Section III.C. below, exemplifies such activity.

20

Therefore, for the reasons stated above and on the basis of the case law described at the conclusion of Section III.A.3.c.i. above, the Court concludes that awarding attorney's fees for 408 hours of non-appellate work (*i.e.*, one and one-half times as many non-appellate hours as were determined to be reasonable in *Barrett*) would be reasonable in this case. This reduction of approximately 60% of the hours claimed for non-appellate work by Attorney Roller and Attorney Supanich reflects the block billing, duplicitous billing, over billing and other deficiencies in their invoices. *See Auto Alliance, Gratz, Reed, Village of Sebring, Coulter* and *Tinch, supra*.

### 4. Conclusion

For the reasons stated above, the Court finds that Plaintiff's counsel (Attorney Roller and Attorney Supanich) reasonably expended a total of 508 hours litigating Plaintiff's cause of action and that the reasonable hourly rate for the hours expended by Plaintiff's counsel is $200/hour. Accordingly, the Court concludes that Plaintiff is entitled to $101,600 for attorney's fees reasonably incurred. The Court finds that this amount adequately compensates Plaintiff's counsel for their efforts expended in this lengthy litigation, and it will encourage attorneys to undertake similar representation. It also avoids the substantial windfall that would occur if the Court awarded attorney's fees of nearly $465,000 for a $14,563 jury verdict, as originally requested by Plaintiff.

## B. Costs

Plaintiff has also requested reimbursement of his the costs incurred by his attorneys, which is contemplated under 28 U.S.C. § 2617(a)(3). The submitted records indicate various costs for mileage, photocopying, facsimiles, postage, deposition and expert witness fees, hotels

and meals.  Defendant maintains that the majority of Plaintiff's requested costs represent general

overhead costs associated with the practice of law, for which reimbursement is not required.

Although cited by neither party, courts generally refer to 28 U.S.C. § 1920 to determine

taxable costs in FMLA and other civil-rights. *See, e.g.*, *Hyldahl v. AT & T*, No. 07-14948, 2009

WL 2567197, at *4 (E.D. Mich. Aug. 17, 2009).  Section 1920 provides as follows:

> A judge or clerk of any court of the United States may tax as costs
> the following:
>
> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts
> necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and the costs of making copies of any
> materials where the copies are necessarily obtained for use in the
> case;
>
> (5) Docket fees under section 1923 of this title; and
>
> (6) Compensation of court appointed experts, compensation of
> interpreters, and salaries, fees, expenses, and costs of special
> interpretation services under section 1828 of this title.
>
> A bill of costs shall be filed in the case and, upon allowance,
> included in the judgment or decree.

*Id*.

First, Attorney Roller lists many incidents of copying costs.  Copying costs are taxable

under §1920(4), provided that "the copies are necessarily obtained for use in the case."  This

Court has held that $.10 per copy is a reasonable rate for reimbursement, and the Court finds that

$.10 per copy would be a reasonable rate in this case. *See, e.g., Hyldahl*, 2009 WL 2567197, at

*4; *Berryman v. Hofbauer*, 161 F.R.D. 341, 345 (E.D. Mich. 1995).  The Court cannot presently

22

award Plaintiff a monetary sum, however, because Plaintiff's invoices fail to specify the number of copies expended or describe the necessity of obtaining such copies. Plaintiff shall therefore submit to Defendant a detailed bill for necessary copying costs at $.10 per copy within 10 days of this opinion and order (and a copy of that bill to the Court), and Defendant shall pay that amount within 10 days of receiving the detailed bill. If there are any objections to the bill—an event that would not be surprising in the least, considering the parties' track record in this matter—Defendant shall notify Plaintiff and the Court of such objections no later than the expiration of the 10 day period within which Defendant must pay the bill submitted by Plaintiff.

Defendant next posits that Plaintiff's costs for postage, facsimile, and other costs are implicit in the overhead for operating a law firm and are thus unrecoverable. Defendant relies on *Hyldahl*, where the court disallowed such costs in a FMLA case, agreeing that those and similar expenses were "an implicit overhead cost or associated with the practice of law or elective in nature." 2009 WL 2567197, at *4.

In *King v. Gowdy*, 268 Fed. Appx. 389 (6th Cir. 2008), the Sixth Circuit discussed whether several categories of costs were taxable under § 1920 in a civil-rights case. The court noted that travel and sustenance costs were dependant upon whether the incurring party was an attorney or a witness, finding that such costs for attorneys were not taxable. *Id.* at 391; *see also See Thompson v. Quorum Health Res.*, No. 1:06-cv-168, 2010 WL 2044524, at *7 (W.D. Ky. May 21, 2010). The court further found that telephone and postage costs were not taxable under § 1920. *King*, 268 Fed. Appx. at 391. Likewise, Plaintiff's legal-research costs are not taxable under that statute. *See Thompson*, 2010 WL 2044524, at *7 (W.D. Ky. May 21, 2010) ("Courts have held that computer research fees are not costs under § 1920.").

23

Plaintiff shall therefore prepare a revised bill of costs consistent with this Opinion and Order, the *King* opinion and 28 U.S.C. § 1920 that contains only those costs that are properly reimbursable.  Plaintiff shall submit that bill to Defendant (and a copy to the Court) within 10 days of this opinion and order, and Defendant shall pay that amount within 10 days of receiving the detailed bill.  If there are any objections to the bill—again, an event that would not be surprising in the least, considering the parties' track record in this matter—Defendant shall notify Plaintiff and the Court of such objections no later than the expiration of the 10 day period within which Defendant must pay the bill submitted by Plaintiff.

## C. Sanctions

Plaintiff also moves for sanctions pursuant to Fed. R. Civ. P. 11 and 28 § U.S.C. 1927, averring that Defendant's refusal to settle this matter, its filings, and its litigation strategies were frivolous and/or unwarranted.

After reviewing Plaintiff's allegations, it occurs to the Court that Plaintiff simply rehashes prior requests for sanctions, which Plaintiff has steadfastly requested as part of every motion or response to a motion that has been filed in this matter.  What began as a contentious case rapidly deteriorated in terms of professional courtesy, to the point that the parties required judicial intervention in completing elementary tasks such as (1) compiling joint jury instructions; (2) agreeing to a stipulated judgment form; and (3) calculating pre-judgment interest even after the Court provided the proper mechanism.  The Court, on at least two occasions, found it necessary to comment on the parties' civility in written orders, and the current filings reflect no improvement in that regard.

Moreover, much of Plaintiff's argument rests on a confounding argument that has been

24

repeatedly asserted (and rejected) throughout this litigation.  Plaintiff contends that Defendant's stated reason for terminating Plaintiff was his "at-will" employment status because: (1) that is what Plaintiff was told at the time of his termination, and (2) Defendant's proffered reduction-in-force ("RIF") defense was belated and meritless.  Plaintiff's at-will employment status meant only that he could be terminated without reason or cause (*i.e.*, he was not subject to a collective-bargaining agreement or other contract) and was completely irrelevant to his FMLA claim.

Furthermore, there is absolutely no evidence on the record to support Plaintiff's assertions that Defendant "shifted" its defense throughout the case, or that the RIF defense was not adopted until after the Sixth Circuit's remand.  Rather, a review of the orders on the docket, including those issued by Judge Feikens, the Sixth Circuit and the undersigned, demonstrates that Defendant relied on this defense at all stages of this case.

Plaintiff also argues that Defendant's RIF argument had no merit from the onset.  Defendant presented evidence at trial that it was attempting to increase its profit margins by reducing its workforce.  The jury found that Defendant violated the FMLA in terminating Plaintiff's employment.  However, the fact that Defendant was unsuccessful at trial does not establish that its proffered defenses were frivolous.

Because Plaintiff has advanced no new justifications for sanctions, and his stated reasons are wholly without merit, the Court denies Plaintiff's request for sanctions.

## IV.  CONCLUSION

Accordingly, and for the above reasons, IT IS HEREBY ORDERED that Plaintiff's motion for attorney's fees [dkt 144] is GRANTED IN PART, and Plaintiff is awarded reasonable attorney's fees of $101,600.

IT IS FURTHER ORDERED that Plaintiff shall submit to Defendant documentation of his reasonable costs consistent with this Opinion and Order within 10 days of the date of this Opinion and Order.

IT IS FURTHER ORDERED that Plaintiff's requests for sanctions are DENIED.

IT IS SO ORDERED.

S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  March 22, 2011

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on March 22, 2011.

S/Marie E. Verlinde
Case Manager
(810) 984-3290